88 P.3d 390 (2004)
151 Wash.2d 294
In the Matter of the Personal Restraint Petition Of Roy Lee ISADORE, Petitioner.
No. 72929-8.
Supreme Court of Washington, En Banc.
Argued February 10, 2004.
Decided April 22, 2004.
*391 Roy L. Isadore, in pro per.
Pattie Mhoon, Tacoma, for Petitioner.
Russell Hauge, Kitsap County Prosecutor, Randall Sutton, Deputy, Port Orchard, for Respondent.
IRELAND, J.
In this case we determine whether a defendant who was misinformed of a direct consequence of a guilty plea is required to show the materiality of that consequence to his decision to plead guilty in order to be entitled to a remedy for an involuntary plea. We hold that a defendant who is misinformed of a direct consequence of his guilty plea need not make a special showing of materiality in order to be afforded a remedy for an involuntary plea.

FACTS
On March 21, 2000, Isadore pleaded guilty to second degree burglary and third degree assault. The prosecutor and defense counsel were unaware that, by statute, Roy Lee Isadore's sentence required community placement following the period of incarceration. The community placement and community supervision check-boxes on the plea form were left blank. Before accepting the plea, the court asked the prosecutor if community placement was part of the sentence and the prosecutor responded that community placement did not apply. The trial court accepted the plea and sentenced Isadore to 54 months, a standard range sentence.
On October 2, 2001, the Department of Corrections notified the prosecutor's office that Isadore's sentence should have included mandatory one-year community placement. Former RCW 9.94A.120(9)(a)(i) (2000). On the State's motion, the trial court amended Isadore's sentence on December 13, 2001, adding a one-year community placement to the sentence.
On January 2, 2002, Isadore filed a personal restraint petition asking the Court of Appeals to strike the amendment to the sentence and to specifically enforce the plea agreement. The court dismissed the petition, holding that Isadore "neither argues nor demonstrates that the defective information about community placement materially affected his decision to plead guilty." Order Dismissing Petition at 2.
*392 Isadore petitioned for discretionary review in this court. In his pro se petition, Isadore asserted that he would not have pleaded guilty had he known of the mandatory community placement requirement. We granted review, and now grant his personal restraint petition.

DISCUSSION

Validity of Guilty Plea
Due process requires that a defendant's guilty plea be knowing, voluntary, and intelligent. Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); In re Pers. Restraint of Stoudmire, 145 Wash.2d 258, 266, 36 P.3d 1005 (2001). A guilty plea is not knowingly made when it is based on misinformation of sentencing consequences. State v. Miller, 110 Wash.2d 528, 531, 756 P.2d 122 (1988). A defendant need not be informed of all possible consequences of his plea, but he must be informed of all direct consequences. State v. Ross, 129 Wash.2d 279, 284, 916 P.2d 405 (1996) (citing State v. Barton, 93 Wash.2d 301, 305, 609 P.2d 1353 (1980)).
Mandatory community placement is a direct consequence of a guilty plea. State v. Turley, 149 Wash.2d 395, 399, 69 P.3d 338 (2003). "[F]ailure to inform a defendant that he will be subject to mandatory community placement if he pleads guilty will render a plea invalid." Turley, 149 Wash.2d at 399, 69 P.3d 338.
Failure to inform a defendant of sentencing consequences upon plea of guilty is also governed by court rule. Under CrR 4.2(f), a court must allow a defendant to withdraw a guilty plea if necessary to correct a manifest injustice.[1] An involuntary plea produces a manifest injustice. Ross, 129 Wash.2d at 284, 916 P.2d 405 (citing State v. Saas, 118 Wash.2d 37, 42, 820 P.2d 505 (1991)); State v. Walsh, 143 Wash.2d 1, 8, 17 P.3d 591 (2001) (mutual mistake regarding sentencing consequences renders guilty plea invalid).
In order to prevail on a collateral attack by way of personal restraint petition the petitioner must first establish that a constitutional error has resulted in actual and substantial prejudice, or that a nonconstitutional error has resulted in a fundamental defect which inherently results in a complete miscarriage of justice. See In re Pers. Restraint of Cook 114 Wash.2d 802, 810, 812, 792 P.2d 506 (1990). These threshold requirements are justified by the court's interest in finality, economy, and integrity of the trial process and by the fact that the petitioner has already had an opportunity for judicial review. In re Pers. Restraint of Cashaw, 123 Wash.2d 138, 148-49, 866 P.2d 8 (1994). Where the petitioner has not had a prior opportunity for judicial review, we do not apply the heightened threshold requirements applicable to personal restraint petitions. Instead, the petitioner need show only that he is restrained under RAP 16.4(b) and that the restraint is unlawful under RAP 16.4(c). In re Pers. Restraint of Garcia, 106 Wash. App. 625, 628, 24 P.3d 1091, 331 P.3d 750 (2001).
In Cashaw, the petitioner challenged the actions of the Indeterminate Sentence Review Board in setting his minimum prison term. In granting Cashaw's personal restraint petition, we stated that the threshold requirements normally required of personal restraint petitioners did not apply in Cashaw's case because he had no prior opportunity to seek review of the board's decision. We observed that the policies behind the threshold requirements are that "`collateral relief undermines the principles of finality of litigation, degrades the prominence of the trial, and sometimes costs society the right to punish admitted offenders.'" Cashaw, 123 Wash.2d at 148, 866 P.2d 8 (quoting Cook, 114 Wash.2d at 809, 792 P.2d 506). We noted that none of those policies justify imposition of the threshold requirements when the challenge is to a decision from which the inmate has had no previous or alternative avenue of judicial review.
Similarly, in Garcia, the petitioner brought a PRP challenging the Department of Correction's *393 revocation of good conduct time credits for failure to participate in chemical dependency treatment classes. He claimed that the treatment program violated his First Amendment rights. In discussing the standard of review to be applied, the court noted that Garcia had no previous or alternative avenue for obtaining judicial review. Therefore, the court held that Garcia was not required to satisfy the standard threshold requirements of a personal restraint petition; rather he was required to satisfy RAP 16.4 by showing that he was restrained and the restraint was unlawful. Garcia, 106 Wash. App. at 629, 24 P.3d 1091.
Likewise, in this case, the period for direct appeal had already passed when the term of community placement was added to Isadore's original sentence. He has had no previous opportunity for state judicial review. Pursuant to RAP 16.4, Isadore need only show that he is restrained and that his restraint is unlawful.
However, we also note that even if Isadore were required to meet the standard personal restraint petition requirements, he has done so in this petition. He alleges he was deprived of his constitutional right to due process because his guilty plea was not knowing, voluntary and intelligent. We have previously held that in order for a guilty plea to be deemed voluntary in the constitutional sense, a defendant must be informed of all direct consequences of his plea. State v. Ross, 129 Wash.2d 279, 284, 916 P.2d 405 (1996) (citing State v. Barton, 93 Wash.2d 301, 305, 609 P.2d 1353 (1980)). In this case, the State concedes that Isadore was not told at the time he pleaded guilty that his sentence would include mandatory community placement, a direct consequence.
Nevertheless, the State argues that Isadore's plea was valid and that he is not entitled to a remedy. The State argues that this court's decision in State v. Acevedo, 137 Wash.2d 179, 970 P.2d 299 (1999), established a new test governing when a defendant can withdraw a guilty plea because of misinformation of direct consequences. The State further argues that Isadore fails this new test.
In Acevedo, the noncitizen defendant was arrested for possession of cocaine with intent to deliver. Before accepting the defendant's guilty plea, the trial court informed Acevedo that he may be subject to supervision by the Department of Corrections following his sentence. However, the plea form did not contain written notification of the community placement requirement. Acevedo sought to withdraw his guilty plea. The trial court denied the Acevedo's motion, but the Court of Appeals reversed, ruling that the plea was involuntary.
This court issued a plurality opinion reversing the Court of Appeals. The lead opinion stated that while mandatory community placement is generally a direct consequence, under the facts of Acevedo it was not a definite and direct consequence because the defendant was subject to deportation following his sentence and would likely never serve the community placement. Acevedo, 137 Wash.2d at 196, 970 P.2d 299. Furthermore, there was no evidence in the record showing that community placement was material to the defendant's decision to plead guilty. Acevedo, 137 Wash.2d at 194, 203, 970 P.2d 299.
The State argues that under Acevedo a defendant who is not informed of the direct consequences of his plea, is not entitled to a remedy unless he establishes that the misinformation was material to his decision to plead guilty. The State argues that the record does not contain evidence objectively establishing that mandatory community placement was material to Isadore's decision to plead guilty. In addition, the State argues that Isadore failed to establish that community placement was subjectively material to Isadore in deciding to plead.
The State has misread the plurality opinion in Acevedo. A majority of the court in Acevedo held that community placement was a direct consequence of Acevedo's guilty plea. The three concurring justices and the two dissenting justices stated that mandatory community placement was a direct consequence of the guilty plea.[2]Acevedo 137 Wash.2d at 204-05, 970 P.2d 299.
Moreover, the materiality test requested by the State conflicts with this court's jurisprudence. *394 This court has repeatedly stated that a defendant must be informed of all direct consequences of a guilty plea, and that failure to inform the defendant of a direct consequence renders the plea invalid. State v. Barton, 93 Wash.2d 301, 305, 609 P.2d 1353 (1980). In addition, this court has repeatedly stated that mandatory community placement is one of those direct consequences of which a defendant must be informed in order for him to make an intelligent and voluntary plea. Turley, 149 Wash.2d at 395, 69 P.3d 338.
A plurality opinion has limited precedential value and is not binding on the courts. State v. Gonzalez, 77 Wash.App. 479, 486, 891 P.2d 743 (1995). The Acevedo opinion should not be relied upon as establishing a new analytical framework for determining the validity of a guilty plea.
In addition, the facts of Acevedo were unique in that the defendant there was facing deportation following his sentence and it was very possible that the mandatory community placement would never occur. The Acevedo court distinguished its facts from the facts of Ross; there is nothing to suggest the Acevedo court intended to alter the longstanding rule applied by Ross, that a defendant must be informed of the direct consequences of his guilty plea. Acevedo should not be expanded to apply to cases with dissimilar facts.
We decline to adopt an analysis that requires the appellate court to inquire into the materiality of mandatory community placement in the defendant's subjective decision to plead guilty. This hindsight task is one that appellate courts should not undertake. A reviewing court cannot determine with certainty how a defendant arrived at his personal decision to plead guilty, nor discern what weight a defendant gave to each factor relating to the decision. If the test is limited to an assertion of materiality by the defendant, it is of no consequence as any defendant could make that after-the-fact claim.
Rather, we adhere to the analytical framework applied in Ross and Walsh. In this case, it is undisputed that when the trial court asked about community placement, the prosecutor responded that community placement did not apply. It is undisputed that community placement was not indicated on the plea form. Defendant Isadore was not informed of this direct consequence of his plea. Therefore, under Ross and Walsh, Isadore's plea was not intelligent or voluntary. Isadore's plea is invalid and his restraint unlawful.

Defendant's Remedy
The defendant has the initial choice of specific performance or withdrawal of the plea. Turley, 149 Wash.2d at 399, 69 P.3d 338 (citing Miller, 110 Wash.2d at 536, 756 P.2d 122). "The defendant is entitled to the benefit of his original bargain." State v. Tourtellotte, 88 Wash.2d 579, 585, 564 P.2d 799 (1977). Once the defendant has made his or her choice, the State bears the burden of showing that the remedy chosen is unjust and there are compelling reasons not to allow that remedy. Turley, 149 Wash.2d at 401, 69 P.3d 338. Where fundamental principles of due process are at stake, the terms of the plea agreement may be enforced, notwithstanding statutory language. Miller, 110 Wash.2d at 532, 756 P.2d 122.
Defendant Isadore requests specific performance of his plea agreement. The State has not objected to the defendant's chosen remedy and in oral argument could not assert any reasons why specific performance would be unjust in this case.
We therefore grant the defendant's personal restraint petition. He is being restrained pursuant to an invalid plea. We order that the amended sentence be stricken and the original sentence enforced.
ALEXANDER, C.J., JOHNSON, MADSEN, SANDERS, BRIDGE, CHAMBERS, OWENS and FAIRHURST, JJ., concur.
NOTES
[1] "The court shall allow a defendant to withdraw the defendants plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice." CrR 4.2(f).
[2] Acevedo, 137 Wash.2d at 204-05, 970 P.2d 299 (Johnson, J., concurring) (while community placement is a direct consequence, there was no manifest error because Acevedo was told orally by the court of the community placement so the guilty plea was knowing and voluntary); id. at 206-07, 970 P.2d 299 (Alexander, J., dissenting) (community placement is a direct consequence and it is unlikely that Acevedo will be deported so he should be allowed to withdraw his plea).