233 P.3d 566 (2010)
In re Post Sentence Review of Jeremy Lynn HUDGENS, Petitioner.
No. 28423-9-III.
Court of Appeals of Washington, Division 3.
May 20, 2010.
*567 Ronda Denise Larson, Assistant Attorney GeneralCorrections D, Olympia, WA, for Petitioner.
Roy S. Fore, Attorney at Law, Wenatchee, WA, Janet G. Gemberling, Julia Anne Dooris, Gemberling & Dooris PS, Spokane, WA, for Respondent.
BROWN, A.C.J.
¶ 1 Today, the Department of Corrections (DOC), joined by the State, invites us to disregard or limit the application of State v. Miller, 110 Wash.2d 528, 536, 756 P.2d 122 (1988) by reversing the trial court's application of Miller and decision to deny the State's motion to amend Jeremy Hudgens' invalid sentence for third degree rape. We decline the DOC's invitation because under Miller, the trial court correctly allowed Mr. Hudgens to elect between withdrawing his guilty plea and insisting on specific performance of his plea agreement. However, we remand for the trial court to make clear that Mr. Hudgens' sentence may not exceed the statutory maximum listed in the sentencing documents for his crime under In re Personal Restraint of Brooks, 166 Wash.2d 664, 675, 211 P.3d 1023 (2009).

*568 FACTS
¶ 2 Under RCW 9.94A.507 (formerly RCW 9.94A.712), a court sentencing sex offenders who have certain prior sex offenses is required to impose the statutory maximum and a minimum term that is usually within the standard range. In October 2008, Jeremy Hudgens pleaded guilty to third degree rape of child, a class C felony. RCW 9A.44.079. He had a prior conviction for second degree assault with sexual motivation. Consequently, under RCW 9.94A.507(1)(b) he should have received a maximum term of five years and a minimum term within the range of 26 to 34 months. RCW 9A.20.021(1)(c). Neither the parties nor the court knew that RCW 9.94A.507 applied to Mr. Hudgens' sentence. The court adopted the State's recommendation of a 26-month determinate sentence and 36 to 48 months of community custody.
¶ 3 The DOC contacted the State about the error. The State moved to amend the judgment and sentence to comply with RCW 9.94A.507. Citing Miller, Mr. Hudgens objected and moved for specific performance of the plea agreement. The superior court, acknowledging the sentence was contrary to law, denied the State's motion, concluding Mr. Hudgens could elect specific performance under Miller and finding the State did not show this choice was unjust under the circumstances. The DOC, joined by the State, then petitioned here for post-sentence review under RCW 9.94A.585(7).

ANALYSIS
¶ 4 The issue is whether the trial court erred in applying Miller to enforce specific performance of a plea agreement that resulted in an unauthorized sentence. The DOC asks us to reconsider the wisdom of the Miller rule or to find, unlike the trial court, that this case comes within Miller's unjust-result exception.
¶ 5 Due process requires that a guilty plea must be knowing, voluntary, and intelligent. Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); In re Pers. Restraint of Isadore, 151 Wash.2d 294, 297, 88 P.3d 390 (2004). A guilty plea based on misinformation of sentencing consequences is not knowing or voluntary. Isadore, 151 Wash.2d at 298, 88 P.3d 390; Miller, 110 Wash.2d at 531, 756 P.2d 122. And an involuntary plea is a manifest injustice. Isadore, 151 Wash.2d at 298, 88 P.3d 390. Under CrR 4.2(f), a defendant may withdraw a guilty plea if necessary to correct a manifest injustice. Isadore, 151 Wash.2d at 298, 88 P.3d 390. Additionally, "where fundamental principles of due process so dictate, the specific terms of a plea agreement based on a mistake as to sentencing consequences may be enforced despite the explicit terms of a statute." Miller, 110 Wash.2d at 532, 756 P.2d 122 (citing State v. Cosner, 85 Wash.2d 45, 530 P.2d 317 (1975)). Because a plea agreement is a contract, interpretation of the plea's terms is a question of law, reviewed de novo. State v. Bisson, 156 Wash.2d 507, 517, 130 P.3d 820 (2006).
¶ 6 In Miller, the defendant was misinformed by his attorney, who had been misinformed by the prosecutor, that the defendant could possibly get an exceptional sentence below 20 years if he pleaded guilty to first degree murder. The prosecutor agreed to recommend 20 years and to allow the defendant to argue for an exceptional sentence of 15 years. Under former RCW 9.94A.120(4) (now RCW 9.94A.540 (1)(a)), however, the mandatory minimum term for first degree murder is 20 years. Neither party was aware that former RCW 9.94A.120(4) applied. When the defendant learned of the mistake before sentencing, he moved to withdraw the plea. The trial court denied the motion and ruled that the interests of justice would be better served by specific performance of the plea agreement. Miller, 110 Wash.2d at 530, 756 P.2d 122. The Court of Appeals reversed, holding that the defendant was entitled to withdraw his plea. Id.; State v. Miller, 48 Wash.App. 625, 742 P.2d 723 (1987).
¶ 7 In response to the State's petition for review, the defendant in Miller argued that because the trial court was statutorily constrained from enforcing the terms of the plea, the only appropriate remedy was withdrawal of the plea. Miller, 110 Wash.2d at *569 532, 756 P.2d 122. The Supreme Court disagreed, holding
where the terms of a plea agreement conflict with the law or the defendant was not informed of the sentencing consequences of the plea, the defendant must be given the initial choice of a remedy to specifically enforce the agreement or withdraw the plea. The prosecutor bears the burden of demonstrating that the defendant's choice of remedy is unjust.
Id. at 536, 756 P.2d 122. Thus, after the defendant chooses a remedy, the burden shifts to the State to show that compelling reasons exist not to allow that choice. Bisson, 156 Wash.2d at 518, 130 P.3d 820 (citing Miller, 110 Wash.2d at 535, 756 P.2d 122). Because the State failed to show it would be prejudiced by withdrawal of the plea, the Miller court concluded the defendant's motion to withdraw the plea should have been granted, and affirmed. Miller, 110 Wash.2d at 537, 756 P.2d 122.
¶ 8 Here, the State does not challenge the trial court's finding that Mr. Hudgens was not fully informed of the consequences of his plea. Accordingly, his plea was involuntary. Isadore, 151 Wash.2d at 298, 88 P.3d 390. Mr. Hudgens chose specific performance of the plea agreement. And the trial court found that the State "presented no argument tending to establish that the defendant's choice of specific performance would be unjust, other than its argument that the sentence is contrary to law." Finding of Fact 23.
¶ 9 First, as held in Miller, 110 Wash.2d at 536, 756 P.2d 122, a defendant is entitled to specific performance even when the terms of the plea agreement conflict with the law. This principle was followed in Isadore, 151 Wash.2d at 303, 88 P.3d 390, where the Supreme Court held the failure to inform the defendant he faced mandatory community placement by statute was a fundamental due process violation justifying specific performance of the plea agreement. It is well settled that Miller gives the trial court authority to enforce terms of a plea agreement that violate RCW 9.94A.507.
¶ 10 To support its contention that a plea agreement cannot exceed the statutory authority of the court, the DOC cites inapplicable cases. In State v. Wallin, for example, this court declared that "a defendant's agreement, even as part of a plea bargain agreement, will not save an otherwise illegal sentence." State v. Wallin, 125 Wash.App. 648, 661, 105 P.3d 1037 (2005). This statement, however, was in response to the State's argument that the defendant had invited the error when he did not challenge a previous court order that unlawfully extended community custody after the defendant violated the terms of his release. Id. Because the extension was not authorized by statute and therefore was invalid on its face, officers were not entitled to rely on it to support a subsequent warrantless search. Id. at 662. Wallin simply stands for the proposition that a defendant cannot empower a court to exceed its statutory sentencing authority by failing to challenge a ruling. Id. at 661-62, 105 P.3d 1037 (citing In re Pers. Restraint of Goodwin, 146 Wash.2d 861, 870, 50 P.3d 618 (2002)).
¶ 11 The DOC also relies on In re Personal Restraint of Gardner, 94 Wash.2d 504, 617 P.2d 1001 (1980). In Gardner, the defendant pleaded guilty to two burglaries and the State agreed to drop charges for over 30 additional burglaries if the defendant continued to help recover all of the property he had stolen. The trial court ordered the defendant to pay restitution equal to five times the value of the property stolen in the two charged burglaries, a violation of RCW 9A.20.030(1). On appeal, the State argued restitution for the uncharged additional crimes was part of the plea bargain and should be enforced. Id. at 507, 617 P.2d 1001. Noting that no restitution can be ordered without a conviction, the court responded that a plea agreement cannot exceed the court's statutory authority. Id. This holding reflects Washington courts' long-standing reluctance to allow mistakes in plea bargains to prejudice defendants: "`a defendant cannot agree to be punished more than the Legislature has allowed for.'" Goodwin, 146 Wash.2d at 871-72, 50 P.3d 618 (quoting In re Pers. Restraint of Moore, 116 Wash.2d 30, 38, 803 P.2d 300 (1991)); see also, State v. *570 Ford, 137 Wash.2d 472, 485, 973 P.2d 452 (1999) (an erroneous sentence based on an incorrectly high offender score requires resentencing).
¶ 12 Contrary to the DOC's arguments, Miller gives the defendant alone the choice of specific performance or withdrawal of the plea. Miller, 110 Wash.2d at 536, 756 P.2d 122. If mutual mistakes in the bargain were interpreted in the State's favor, arguably fewer defendants would trust the plea process: "the integrity of the plea bargain process requires that defendants be entitled to rely on plea bargains as soon as the court has accepted the plea." Id. The Miller rule has not been overturned, is applicable here, and binds us. See State v. Gore, 101 Wash.2d 481, 487, 681 P.2d 227 (1984) (once the Supreme Court has decided an issue of state law, that interpretation is binding on all lower courts until it is overruled by the Supreme Court).
¶ 13 Citing supplemental authority, the DOC asks us to consider a recent case out of Division Two of this court: State v. Barber, 152 Wash.App. 223, 217 P.3d 346 (2009). The defendant in Barber agreed to plead guilty and the State agreed to recommend no community custody. When accepting the plea, the trial court asked if community custody was required and defense counsel answered that he was surprised to learn that it was not. The prosecutor did not respond. After telling the defendant that it was not bound by the plea agreement, the trial court accepted the plea and imposed the recommended sentence without a term of community custody. Later, the DOC notified the trial court that community custody was mandatory for the defendant's crime. The State agreed with the defendant that he had the right to withdraw the plea or to seek specific performance. When the defendant chose specific performance, the State warned him that while the State was bound by the plea agreement, the court was not. Id. at 226, 217 P.3d 346. At the later hearing, the State again recommended no community custody, but the trial court modified the judgment and sentence to add a term of community custody.
¶ 14 On appeal, the defendant in Barber argued the trial court was bound by the plea agreement. Division Two disagreed, holding "[s]pecific performance of a plea bargain requires only that the prosecutor recommend what he or she agreed to recommend.... The trial court is not bound by any recommendations contained in the plea agreement." Id. at 227, 217 P.3d 346 (citations omitted). The Washington Supreme Court accepted review of Barber in February 2010, stating the issue as "[w]hether a defendant who agreed to plead guilty while being misinformed that his crime did not require a term of community custody is entitled to specific performance of the plea agreement consisting of a sentence without community custody." State v. Barber, No. 83640-0, 168 Wash.2d 1001, 226 P.3d 780 (2010), Washington Court Home Page, "Supreme Court Issues/Cases Not Yet Set."
¶ 15 Here, unlike in Barber, the trial court decided to honor the plea agreement and found the State did not show that Mr. Hudgens' choice of specific performance was unjust. Nothing in the findings of fact and conclusions of law suggests the trial court felt it was bound by the plea agreement. See State v. Harrison, 148 Wash.2d 550, 554, 61 P.3d 1104 (2003) (the specific performance remedy entitles the defendant to a reversal of the original sentence and a de novo sentencing hearing in which the State abides by the plea agreement and the court is free to exercise its discretion).
¶ 16 The DOC next contends specific performance of the unlawful plea agreement violates the separation of powers doctrine. The doctrine of separation of powers is not enunciated in either the Washington or federal constitutions. State v. Blilie, 132 Wash.2d 484, 489, 939 P.2d 691 (1997). The doctrine is derived from the tri-partite system of government established in both constitutions. Id. To determine whether a particular governmental function violates the separation of powers doctrine, we ask "`not whether two branches of government engage in coinciding activities, but rather whether the activity of one branch threatens the independence or integrity or invades the prerogatives of another.'" Id. at 490, 939 P.2d 691 (quoting Zylstra v. Piva, 85 Wash.2d 743, 750, 539 P.2d 823 (1975)). The doctrine is "grounded in flexibility and practicality, and *571 rarely will offer a definitive boundary beyond which one branch may not tread." Id.
¶ 17 The DOC argues specific performance of an unlawful plea agreement violates the separation of powers doctrine because it encroaches on the legislature's prerogative under RCW 9.94A.507 to impose a specific sentence on certain sex offenders. Fixing penalties for criminal offenses is generally a legislative not a judicial function. State v. Manussier, 129 Wash.2d 652, 667, 921 P.2d 473 (1996). But a trial court has inherent power to enforce a plea agreement so as to preserve the defendant's constitutional rights. State v. Breazeale, 144 Wash.2d 829, 839-40, 31 P.3d 1155 (2001) (citing State v. Shineman, 94 Wash.App. 57, 62-63, 971 P.2d 94 (1999)). The State cites no authority showing the exercise of that inherent authority undermines the operation of the legislature or the rule of law. In re Interest of Mowery, 141 Wash.App. 263, 281, 169 P.3d 835 (2007); see also State v. Wadsworth, 139 Wash.2d 724, 740-41, 991 P.2d 80 (2000) (the judiciary has inherent power to do all that is reasonably necessary for the efficient administration of justice).
¶ 18 Finally, the DOC contends specific performance of the plea agreement is unjust. Once an offender chooses between remedies under Miller, the burden shifts to the State to give compelling reasons why the remedy would be unjust. Miller, 110 Wash.2d at 535-36, 756 P.2d 122. Here, the trial court found that the State "presented no argument tending to establish that the defendant's choice of specific performance would be unjust, other than its argument that the sentence is contrary to law." Finding of Fact 23.
¶ 19 The DOC argues specific performance detrimentally affects its ability to protect the public from future sex offenders. Under RCW 9.94A.507, the Indeterminate Sentence Review Board reviews an offender's likelihood to reoffend and decides whether to release him into community custody for the remaining time left under the maximum term. RCW 9.94A.507(6); RCW 9.95.420(3)(a). The offender must at least serve out his maximum term in community custody, and if he violates the terms of his community custody he can be returned to prison to serve his maximum sentence. RCW 9.95.435(1); RCW 9.94A.507(6)(b). In contrast, the DOC argues, a determinate sentence, like here, usually results in a shorter supervision period under which the DOC has jurisdiction over the offender. Lastly, the DOC argues it cannot return the offender to confinement for longer than 60 days for each violation of the conditions of community custody. Former RCW 9.94A.737(3) (2007).
¶ 20 While differences exist between an indeterminate sentence under RCW 9.94A.507 and a determinate sentence under RCW 9.94A.510, the trial court was apparently not persuaded that specific performance was unjust. Indeed, the State was allowed to make the same arguments to the trial court as have been made here. After acknowledging and considering the State's arguments, the trial court properly exercised its discretion in deciding to adhere to its previous sentence.
¶ 21 Mr. Hudgens' determinate sentence specified a five-year maximum punishment. We requested additional briefing on this point. Mr. Hudgens' sentence is 26 months' confinement plus 36 to 48 months' community custody or the period of earned early release, whichever is longer. The potential combined terms of confinement and community custody are thus from 66 to 74 months, exceeding the statutory 60 month maximum. This violates RCW 9.94A.505(5) (a court may not impose a term of confinement and a term of community custody that exceeds the statutory maximum for the crime). RCW 9A.44.079; RCW 9A.20.021(1)(c). Accordingly, we remand to the trial court for an amended sentence establishing that the combination of confinement and community custody shall not exceed the statutory maximum. In re Pers. Restraint of Brooks, 166 Wash.2d 664, 675, 211 P.3d 1023 (2009).
¶ 22 Affirmed and remanded for correction of sentence.
WE CONCUR: SWEENEY and KORSMO, JJ.