IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | |
| | ) | No. 40545-1-III |
| | ) | |
| Ralph Howard Blakely, | ) | |
| | ) | |
| | ) | |
| Petitioner. | ) | UNPUBLISHED OPINION |
| | ) | |

COONEY, J. — Ralph Blakely has been in prison for over 20 years after being convicted of two counts of solicitation to commit murder in the first degree. He is approaching 90 years of age and suffers from several ailments. Mr. Blakely has been referred for extraordinary medical placement (EMP) multiple times, with the Department of Corrections (DOC) denying each application.

Through this personal restraint petition (PRP), Mr. Blakely contends the DOC failed to comply with Washington law when it denied his EMP applications and failed to implement procedures to prevent the erroneous denial of his applications. Mr. Blakely's appointed counsel also contends a competency hearing should be held to assess whether

Mr. Blakely is able to aid in his postconviction proceedings. Because Mr. Blakely has failed to show his restraint is unlawful, we deny his PRP. We also reject Mr. Blakely's request for a competency hearing.

BACKGROUND

Mr. Blakely was sentenced on March 22, 2005, to 420 months in prison after being convicted of two counts of solicitation to commit murder in the first degree. His current early release date is November 3, 2036. Mr. Blakely's convictions stem from his attempt to hire a fellow inmate to kill his ex-wife and daughter while he was in jail awaiting trial for kidnapping his ex-wife. *State v. Blakely*, noted at 134 Wn. App. 1043 (2006).

Mr. Blakely will turn 90 years old in June 2026 and has many health problems. He has applied for an EMP under RCW 9.94A.728(1)(c)(i) multiple times, with the DOC denying his request each time. Currently, RCW 9.94A.728 provides:

> (1) No incarcerated individual serving a sentence imposed pursuant to this chapter and committed to the custody of the department shall leave the confines of the correctional facility or be released prior to the expiration of the sentence except as follows:
>
> . . . .
>
> (c)(i) The secretary may authorize an extraordinary medical placement for an incarcerated individual when all of the following conditions exist:
>
> (A) The incarcerated individual has been assessed by two physicians and is determined to be one of the following:

2

(I) Affected by a permanent or degenerative medical condition to such a degree that the individual does not presently, and likely will not in the future, pose a threat to public safety; or

(II) In ill health and is expected to die within six months and does not presently, and likely will not in the future, pose a threat to public safety;

(B) The incarcerated individual has been assessed as low risk to the community at the time of release; and

(C) It is expected that granting the extraordinary medical placement will result in a cost savings to the state.

Whereas from July 2021 until July 2023, the statute read, in relevant part:

(c)(i) The secretary may authorize an extraordinary medical placement for an offender when all of the following conditions exist:

(A) The offender has a medical condition that is serious and is expected to require costly care or treatment;

(B) The offender poses a low risk to the community because he or she is currently physically incapacitated due to age or the medical condition or is expected to be so at the time of release; and

(C) It is expected that granting the extraordinary medical placement will result in a cost savings to the state.

Former RCW 9.94A.728 (2021). Though the DOC's written policy regarding EMP may have been outdated,[1] the DOC followed the current statute's prescribed procedures when it considered Mr. Blakely's EMP requests.

---

[1] The DOC has since updated their EMP policy. *See* Extraordinary Medical Placement, *Policy*, No. DOC 350.270, (Wash. Dep't of Corr. Mar. 27, 2025) https://doc.wa.gov/sites/default/files/data/files/350270.pdf.

According to Denette Wagner, the statewide EMP coordinator, the EMP process begins with a referral. Anyone, from inmates themselves to community members, may refer an inmate for an EMP. When Ms. Wagner receives a referral, she obtains the forms and supporting documents needed for the EMP application. The documents that comprise the EMP packet include the EMP screening form and the inmate's medical records. Each prison in Washington has a facility medical doctor who oversees medical operations for that facility. The facility medical doctor, or their designee, is responsible for completing the screening form.

The screening form is a four-page document that requires the facility medical doctor or their designee to consider: (1) whether the inmate has a permanent physical or mental disability, their mobility level, whether they have cognitive or behavioral impairments, (2) if they need assistance with daily living activities including bathing, grooming, transferring, eating, or toileting, (3) whether they "have a permanent or degenerative medical condition," and (4) whether they are expected to die within six months. DOC's Resp. to Amend. Petition, Ex. 3, Attach. A at 4. The facility medical doctor or their designee then signs the form and states whether they believe the inmate meets the EMP eligibility requirements.

Once the screening form is finalized, Ms. Wagner reviews the form for completeness and then sends it to the DOC's chief medical officer. The chief medical officer or a designated physician then "repeats the review that [the facility medical

doctor] completed" and "makes the final determination of statutory medical criteria." DOC's Resp. to Amend. Petition, Ex. 3 at 4. If the chief medical officer determines the criteria for an EMP are not met, then Ms. Wagner notifies the inmate. If the chief medical officer determines an EMP is appropriate, then Ms. Wagner sends the EMP packet to the Headquarters Community Screening Committee (HCSC) for preliminary review. Ms. Wagner initiates a plan for an EMP if the HCSC believes the inmate can be safely placed in the community. If the HCSC determines, given the tentative EMP placement plan, that the inmate meets the other statutory requirements for EMP, the HCSC sends the EMP packet to the assistant secretary for community corrections, the indeterminate sentencing review board (if applicable), the assistant secretary for prisons, the deputy assistant secretary for health services, and the deputy secretary for review and input. Their recommendations are then forwarded to the DOC secretary for final approval or denial of the EMP request. The inmate may reapply if their EMP application is denied.

Mr. Blakely was screened for an EMP in February 2024, July 2024, October 2024, and February 2025. Each time, the facility medical doctor determined he did "not meet medical eligibility requirements" for an EMP and the chief medical officer agreed. DOC's Resp. to Amend. Petition, Ex. 3, Attachs. B, C, D, E. Mr. Blakely was notified each time his EMP applications were denied.

5

Based on the denials of his EMP referrals, Mr. Blakely filed a PRP alleging numerous issues. One issue raised was that the DOC had "denied Blakely's RCW 9.94A.728(4) motions for extraordinary medical release" numerous times. PRP at 3. This court directed the DOC to respond solely to this claim. Thereafter, counsel was appointed for Mr. Blakely, and an amended PRP was filed on his behalf.

ANALYSIS

UNLAWFUL RESTRAINT

Mr. Blakely argues the DOC is not complying with the amendments to RCW 9.94A.728 in considering his applications for an EMP. The DOC responds that because the decision to grant or deny an EMP is subject to the discretion of the DOC secretary, Mr. Blakely is unable to show his restraint is unlawful. We agree with the DOC.

A PRP offers relief from unlawful restraint. RAP 16.4(a). A petitioner is restrained if they are "confined." RAP 16.4(b). The parties do not dispute that Mr. Blakely is in prison and therefore restrained. "Where the petitioner has not had a prior opportunity for judicial review . . . the petitioner need show only that he is restrained under RAP 16.4(b) and that the restraint is unlawful under RAP 16.4(c)." *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 299, 88 P.3d 390 (2004). Under RAP 16.4(c)(6), a restraint is unlawful if the "conditions or manner of restraint . . . are in violation of the Constitution of the United States or the Constitution or laws of the State of Washington."

Mr. Blakely argues that the DOC's failure to assess his EMP application according to the current version of RCW 9.94A.728 created an unlawful restraint. Here, as the DOC points out, Mr. Blakely does not have a right to an EMP. Both the former and current versions of RCW 9.94A.728(1)(c)(i) state the secretary "*may*" authorize an EMP if certain conditions are met. (Emphasis added.) The decision to authorize an EMP abides in the sole discretion of the DOC secretary. In other words, even if an inmate meets all the conditions for an EMP, the DOC secretary may still deny the application. Moreover, the DOC secretary may revoke an EMP at any time. RCW 9.94A.728(1)(c)(i)(C)(iv). Thus, Mr. Blakely has no right to an EMP. Even if Mr. Blakely met all the conditions for an EMP, the DOC's secretary's denial of his application would not be violative of the laws of the State of Washington. Mr. Blakely cannot show his restraint is unlawful. RAP 16.4(c)(6).

COMPETENCY

Mr. Blakely argues he has a right to be competent to pursue relief in this PRP. Mr. Blakely's attorney contends that Mr. Blakely is not currently competent because "he is fixated on the belief that he is the victim of pervasive conspiracies" and, as a result, "insists on directing conversations" to his perceived misconduct on the part of law

enforcement and using tort actions of defamations and outrage to secure his release.

Amend. PRP at 23. He requests a competency hearing.[2]

As an initial matter, we question whether this issue is properly before this court. After Mr. Blakely filed his original PRP, this court requested the DOC respond only to his claims regarding the DOC's "denial of his motions/requests for [EMP]." Letter from Tristen Worthen, Clerk of Court, *In re Pers. Restraint of Blakely*, No. 40545-1-III (Wash. Ct. App. Aug. 7, 2024). The issue of Mr. Blakely's competence was raised for the first time in Mr. Blakely's amended PRP drafted by his attorney.

Notwithstanding this procedural deficiency, we address the issue. No authority exists to support Mr. Blakely's contention that he is entitled to a competency evaluation or competency restoration to challenge the DOC's decisions in denying him an EMP. This is likely due to the decision to grant or deny an EMP being wholly vested with the DOC's secretary. While an incarcerated individual's competency may be relevant to the

---

[2] Mr. Blakely's competence argument is supported by a "Declaration of Counsel" in which his postconviction relief attorney stated, "I am concerned that Mr. Blakely may have valid claims concerning the lack of needed treatment and the DOC's inability to provide for his basic necessities. However, I am unable to extract that information because of his focus on deluded claims. This information is not available from any other source." Declaration of Counsel Supporting Amended Petition, *In re Pers. Restraint of Blakely*, No. 40545-1-III (Wash. Ct. App. Feb. 3, 2025) at 8.

physicians' assessments, an individual does not have a right to undergo competency restoration when applying for or challenging the denial of an EMP.

Mr. Blakely argues that RCW 2.70.020(2) provides a limited right to counsel and, in order to give meaning to this statutory right, due process requires that he be able to rationally communicate with counsel. Notably, he cites no Washington authority for this proposition and his cited out-of-state authority is inapposite. *Reid v. State*, 197 S.W.3d 694 (Tenn. 2006) (discussing competence in the postconviction relief context for inmate sentenced to death); *Haraden v. State*, 32 A.3d 448, 452 (Me. 2011 ) (competency required because "[p]ost-conviction petitioners in Maine are expressly afforded a statutory right to counsel"); *see also In re Pers. Restraint of Jian Liu,* 150 Wn. App. 484, 208 P.3d 1207 (2009) (competence in an extradition proceeding). Furthermore, RCW 2.70.020(2) does not confer a *right* to counsel for postconviction proceedings, but instead "provide[s] access to counsel" for indigent persons subject to eligibility criteria and prioritization.

## CONCLUSION

We deny Mr. Blakely's PRP as he is unable to show his current restraint is unlawful and reject his argument that he has a right to a competency hearing to pursue postconviction relief.

No. 40545-1-III
*In re Personal Restraint of Blakely*


A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Cooney, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Murphy, J.