142 P.3d 615 (2006)
In the Matter of the Personal Restraint Petition of Ramon Flores MURILLO, Petitioner.
No. 24444-0-III.
Court of Appeals of Washington, Division 3.
August 17, 2006.
*616 David Zuckerman, Attorney at Law, Seattle, WA, for Petitioner.
Teresa Jeanne Chen, Grant County Prosecutors Office, John Dietrich Knodell III, Attorney at Law, Ephrata, WA, for Respondent.

OPINION PUBLISHED IN PART
SWEENEY, C.J.
¶ 1 RCW 9.94A.712 requires that a judge sentence a defendant convicted of first degree child molestation to the statutory maximumlife imprisonment. The sentencing court sets only a minimum term, within the standard range. RCW 9.94A.712. Ramon Murillo pleaded guilty to first degree child molestation. But the judge at the guilty plea hearing told him: "If you plead guilty to this charge, I will sentence you to prison and the range is 51 to 68 months. And I have to impose sentence within that range. I guess I can go low, but I cannot go above under the present law [referring to the holding in Blakely,[1] which had been filed less than six weeks prior to Mr. Murillo's guilty plea hearing]. You can probably expect a sentence *617 within that range." Personal Restraint Petition (hereafter Petition) Ex. H at 5. Mr. Murillo's sentence reflected neither the statutory maximumlifenor a minimum sentence. The judge imposed a determinate sentence of 59½ months. The Department of Corrections requested that the judgment be corrected to reflect the statutorily mandated life sentence. The judge then amended Mr. Murillo's sentence and imposed life in prison with a statutory minimum of 59½ months.
¶ 2 The question before us is whether Mr. Murillo's plea was knowingly and voluntarily entered. We conclude that it was not. We therefore grant his petition, vacate his sentence, and remand for further proceedings.

FACTS

GUILTY PLEA HEARING
¶ 3 Mr. Murillo signed a "Statement of Defendant on Plea of Guilty to Sex Offense" (hereafter statement on plea of guilty). It included the following statement of his "Total Actual Confinement"  51-68 months:

--------------------------------------------------------------------------------------------------
| C | OFFENDER | STANDARD | Plus | Total Actual | COMMUNITY | MAXIMUM |
| O | SCORE | RANGE | Enhancements | Confinement | CUSTODY | TERM AND/OR |
| U | | ACTUAL | | (Standard | RANGE | FINE |
| N | | CONFINEMENT | | range | (Only applicable | |
| T | | (Not including | | including | for crimes | |
| | | enhancements) | | enhancements) | committed on or | |
| | | | | | after July 1, 2000.| |
| | | | | | For crimes | |
| | | | | | committed prior | |
| | | | | | to July 1, 2000, | |
| | | | | | see ¶(f) | |
|-------------------------------------------------------------------------------------------------|
| 1 | 0 | 51 - 68 | | 51 - 68 | | LIFE |
| | | MONTHS | | months | | IMPRISONMENT|
| | | | | | | |
--------------------------------------------------------------------------------------------------

State's Resp't's Br. (hereafter Response) App. C at 2. Two pages later on page 4 of the statement on plea of guilty, the following language appears in preprinted format:

For sex offenses committed on or after September 1, 2001: (i) Sentencing under RCW 9.94A.712: If this offense is for any of the offenses listed in subsections (aa) or (bb), below, the judge will impose a maximum term of confinement consisting of the statutory maximum sentence of the offense and a minimum term of confinement either within the standard range for the offense or outside the standard range if an exceptional sentence is appropriate.
Response App. C at 4. These are mandatory provisions of RCW 9.94A.712.[2]
¶ 4 At the guilty plea hearing, the judge told Mr. Murillo, "[i]f you plead guilty to this charge, I will sentence you to prison and the range is 51 to 68 months. And I have to impose sentence within that range. I guess I can go low, but I cannot go above under the present law. You can probably expect a sentence within that range." Petition Ex. H at 5. Mr. Murillo pleaded guilty. The court *618 accepted Mr. Murillo's plea of guilty. The court did not mention that he must impose a maximum sentence of life or that a sentence within the standard range would represent only his minimum term. Nor did the court advise him that he was subject to a life term of community custody if he was released prior to expiration of the maximum sentence of life.

SENTENCING HEARING
¶ 5 The State recommended a sentence in the middle of the standard range. Petition Ex. J at 2. Mr. Murillo's lawyer responded that the prosecutor had agreed to recommend the low end of the range. Id. But the written statement on plea of guilty recited that the State reserved its recommendation for Mr. Murillo's confinement time. Response App. C at 5. The court imposed a determinate mid-range sentence of 59½ months.
¶ 6 The parties along with the court talked about community custody:
THE COURT: . . . .
. . . What about community custody. . .?
MR. SMITH: I believe he's subject to the indeterminate sentence board for life. . . .
THE COURT: Is that reflected on here. . .?
. . . .
THE COURT: . . . .
Do we need a different order?
MS. FAIR: I don't think so, your Honor. I can review it with Mr. Knodell, but I don't believe so. Because it does point out that the maximum sentence is life imprisonment. And I believe if the court goes ahead and attaches Appendix H [providing for community custody "up to life"] to the judgment and sentence, I think we're fine. . . .
. . . .
THE COURT: All right. We'll attach it.
Petition Ex. J at 9-12.
¶ 7 The judgment and sentence accurately reflected the sentencing judge's ruling. It imposed a sentence of 59½ months and left blank the preprinted portions of the judgment form that were provided for sentences imposed under RCW 9.94A.712. It provided:
 (a) CONFINEMENT. RCW 9.94A.589. Defendant is sentenced to
 the following term of total confinement in the custody of the
 Department of Corrections (DOC):
 59½ Months on Count #1 ___ months on Count ___
 _____ Months on Count ________ _____ months on Count _____
 _____ Months on Count ________ _____ months on Count _____
 Actual number of months of total confinement ordered is: ____
 ------------------------------------------------------------------------------
 . . . .
 (b) CONFINEMENT. RCW 9.94A.712: The defendant is sentenced
 to the following term of confinement in the custody of the DOC:
 ______ Months on Count _____ ____ months on Count ____
 ______ Months on Count _____ ____ months on Count ____
Response App. E at 6.
¶ 8 The preprinted community custody paragraphs within the judgment itself are not filled in:
[ ] COMMUNITY CUSTODY for count(s), sentenced under RCW 9.94A.712, is ordered for any period of time the defendant is released from total confinement before the expiration of the maximum sentence.
Id. at 7. A generic preprinted appendix (appendix H) is attached to the judgment. It sets out the various alternative community custody terms. And it recites that for sex offenses committed after September 1, 2001, community custody can be "up to life." The appendix does not state that for Mr. Murillo's offense, first degree child molestation, community custody is always for life.

DEFENSE COUNSEL'S ADVICE
¶ 9 Mr. Murillo's attorney testified by deposition in a civil suit filed against Grant County (see Best v. Grant County, Kittitas *619 County Superior Court No. 04-2-00189-0) over the provision of indigent criminal defense services:
when we did the sentence . . . I would not have talked to Mr. Murillo about the life maximum, because that was not really on anybody's mind. We thought we were sentencing him to something within the standard range. [RCW 9.94A.]712 just hadn't crossed anybody's mind.
Petition Ex. P at 239.
¶ 10 Mr. Murillo also testified by deposition that counsel told him that the maximum time he would serve was the sentence in the sentence range. Petition Ex. Q at 27. And he stated he would not have pleaded guilty had he known that he would be sentenced to a maximum term of life. Id. at 32-33.
¶ 11 Later the State filed a declaration of Mr. Murillo's lawyer. The lawyer retreated from his earlier sworn testimony that he did not talk to Mr. Murillo about the maximum sentence of life:
In my deposition, I did not have the advantage of viewing transcripts of hearings. After refreshing my memory with the plea and sentencing transcripts, I recall that in preparation for the plea, I informed Mr. Murillo that the plea would result in an indeterminate sentence with life being the top end and a set low end being between 51-68 months. Mr. Murillo knew he was looking at a possible, but not probable, life sentence.
Response App. D at 2.

POST SENTENCE PROCEEDINGS
¶ 12 The Department of Corrections caught the error. It requested that Mr. Murillo be resentenced. The Department transported Mr. Murillo back to the Grant County Jail. He was not invited to withdraw his guilty plea. The prosecutor told the court that the Department of Corrections had reported "technical problems" with the judgment. Petition Ex. K at 2. The prosecutor then outlined the necessary changes: checking the box that indicated Mr. Murillo was subject to RCW 9.94A.712; changing the original entry for confinement on page six to "59 and a half to life"; and checking the box for community custody on page seven. Petition Ex. K at 3. The court made those changes. And the amended judgment and sentence looked like this:
 (b) CONFINEMENT. RCW 9.94A.712: The defendant is sentenced
 to the following term of confinement in the custody of
 the DOC:
 Count 1 minimum term 59½ maximum term LIFE 
 Count ___________________ minimum term ________________________ maximum term __________________
Response App. F at 6.
[X] COMMUNITY CUSTODY for count(s) 1, sentenced under RCW 9.94A.712, is ordered for any period of time the defendant is released from total confinement before the expiration of the maximum sentence.
Id. at 7. Mr. Murillo said nothing on the record. His lawyer noted the changes.

DISCUSSION

CONSEQUENCES OF PLEADING GUILTY
¶ 13 Mr. Murillo argues that no one told him that he must be sentenced to the maximum term for child molestationlife. And, in fact, the court told him that it would sentence him within the standard range. He notes that the typed-in portions of his statement on plea of guilty list his "Total Actual Confinement" as 51-68 months. And, the space for "Community Custody" was left blank altogether.
¶ 14 The State responds that the statement on plea of guilty sets out the requirement of a maximum sentence of life for his offense. And it sets out the term for community custodyalso for the maximum term.
¶ 15 A defendant's guilty plea must be knowing, voluntary, and intelligent. Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); In re Pers. Restraint of Isadore, 151 Wash.2d 294, 297, 88 P.3d 390 (2004). And so a court must inform a defendant of all the direct consequences of the plea, including any term of community custody. Isadore, 151 Wash.2d at 298, 88 P.3d 390 (citing State v. Ross, 129 *620 Wash.2d 279, 284, 916 P.2d 405 (1996); State v. Turley, 149 Wash.2d 395, 399, 69 P.3d 338 (2003)). A guilty plea is not then knowingly made when it is based on misinformation as to the sentencing consequences. State v. Miller, 110 Wash.2d 528, 531, 756 P.2d 122 (1988). These constitutional requirements are implemented by court rule here in Washington: "The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea." CrR 4.2(d).
¶ 16 A plea is involuntary if the plea is entered without knowledge of the direct sentencing consequences. This is a manifest injustice. CrR 4.2(f); Isadore, 151 Wash.2d at 298, 88 P.3d 390 (citing Ross, 129 Wash.2d at 284, 916 P.2d 405; State v. Walsh, 143 Wash.2d 1, 8, 17 P.3d 591 (2001) (mutual mistake regarding sentencing consequences renders guilty plea invalid)). The sentence the court will impose is, of course, a direct consequence of the plea. Isadore, 151 Wash.2d at 298, 88 P.3d 390 (citing Miller, 110 Wash.2d at 531, 756 P.2d 122). And the court must allow a defendant to withdraw a guilty plea to correct that manifest injustice.
¶ 17 The sentence required by statute for Mr. Murillo's crime (child molestation) was life imprisonment. RCW 9.94A.712; RCW 9A.44.083(2); RCW 9A.20.021(1)(a). But the judge told Mr. Murillo otherwise: "I guess I can go low [below the standard range minimum sentence], but I cannot go above under the present law." Petition Ex. H at 5. The sentencing court wrote the sentence of 59½ months in the portion of the judgment form used for sentences not subject to RCW 9.94A.712. It left blank the portion of the judgment form that related to sentences subject to RCW 9.94A.712.
¶ 18 The court did not say anything about community custody at the guilty plea hearing. And the community custody term set out on page 2 of the written statement on plea of guilty was left blank, despite a preprinted recitation on page 4 of the statement that a person convicted of sex offenses such as first degree child molestation must serve community custody if released before his maximum sentence expires. And the term of that community custody is the time remaining on the maximum. Response App. C at 4. This is error. CrR 4.2(d); Isadore, 151 Wash.2d at 298, 88 P.3d 390.
¶ 19 CrR 4.2(d) imposes a duty on the court to determine that the defendant is entering a plea with a correct understanding of the consequences of his plea. That rule implements important constitutionally mandated principles. See Boykin, 395 U.S. at 242, 89 S.Ct. 1709. That duty was not met here. The court apparently misunderstood the sentencing consequences. And both the judge's advice to Mr. Murillo and the written plea agreement reflect this misunderstanding. We therefore grant Mr. Murillo's personal restraint petition and order the superior court to allow him to withdraw his guilty plea. See Hunter v. State, 1992 OK CR 1, 825 P.2d 1353, 1355.

REMEDY
¶ 20 Mr. Murillo argues he can elect specific performance of the 59½ month determinate sentence the superior court originally imposed. But specific performance is a remedy reserved for breach by the State of the precise conditions of a plea agreement. State v. Bisson, 156 Wash.2d 507, 130 P.3d 820 (2006). Because the record here is inconclusive as to whether the parties understood that Mr. Murillo's determinate sentence would be in the standard range, a fact-finding hearing is needed if Mr. Murillo asks for specific performance.

STATE'S ALLEGED BREACH OF THE PLEA AGREEMENT
¶ 21 Mr. Murillo argues, in the alternative, that we should allow him to enforce his understanding of the prosecutor's promised recommendation  the low end of the standard range. And he argues that neither he nor the prosecutor considered the implications of RCW 9.94A.712 (mandatory life sentence for sex crime) when he was sentenced. This, he says, is a mutual misunderstanding of the sentence that renders a plea invalid. And the State should therefore be limited to a sentence within the standard range even if it *621 is legally incorrect. See Walsh, 143 Wash.2d 1, 17 P.3d 591.
¶ 22 The State cites defense counsel's declaration (filed after the deposition relied upon by Mr. Murillo) that he informed Mr. Murillo that his sentence would be for life, and that the court would only set a minimum sentence within the standard range. Response App. D ¶ 8.
¶ 23 The State also relies on the statement on plea of guilty. It recites that the State reserved its sentence recommendation for the sentencing hearing. The State points out that the court at the guilty plea hearing also advised Mr. Murillo that "[t]he prosecutor is not making a recommendation at this time." Petition Ex. H at 6.
¶ 24 Mr. Murillo responds that defense counsel's declaration contradicts his prior sworn deposition testimony.
¶ 25 "[A] guilty plea entered on a plea bargain that is based upon misinformation about sentencing consequences is not knowingly made." In re Pers. Restraint of Hoisington, 99 Wash.App. 423, 428, 993 P.2d 296 (2000) (citing Miller, 110 Wash.2d at 531, 756 P.2d 122). The sentencing court can permit the defendant to withdraw his plea. Or it may grant specific performance of the agreement. Miller, 110 Wash.2d at 531, 756 P.2d 122 (citing State v. Tourtellotte, 88 Wash.2d 579, 585, 564 P.2d 799 (1977)). The fact that the terms of the plea agreement are contrary to the explicit terms of a sentencing statute does not preclude enforcement of the agreement, "where fundamental principles of due process so dictate." Id. at 532, 756 P.2d 122 (citing State v. Cosner, 85 Wash.2d 45, 530 P.2d 317 (1975)). "Those principles operate to bind the court, as well, once a plea agreement has been validly accepted." State v. Schaupp, 111 Wash.2d 34, 38, 757 P.2d 970 (1988). "[T]he defendant's choice of remedy controls, unless there are compelling reasons not to allow that remedy." Miller, 110 Wash.2d at 535, 756 P.2d 122.
¶ 26 The statement on plea of guilty here is inconsistent. It states the total actual term of confinement will be within the range of 51 to 68 months. But it also sets out the provisions of RCW 9.94A.712 requiring a life sentence.
¶ 27 The record here is unclear as to who understood what. Mr. Murillo's lawyer testified, under oath, during a deposition that both he and the State assumed Mr. Murillo was entitled to a standard range sentence. But the lawyer's later declaration contradicts this. The original judgment imposed a standard range sentence. It left blank the paragraph in the judgment for imposition of sentences under RCW 9.94A.712. This suggests that the court and the lawyers were at least mistaken about the correct sentence.
¶ 28 In sum, the parties disagree on the intended plea agreement. That is significant only if Mr. Murillo insists on specific performance of his determinate sentence, 59½ months, because specific performance is not available when the plea agreement is ambiguous. See Bisson, 156 Wash.2d at 523, 130 P.3d 820.
¶ 29 In Bisson, Mr. Bisson pleaded guilty to five counts of first degree robbery. But the sentencing court failed to tell Mr. Bisson that the deadly weapon enhancements had to be served consecutively to one another. Bisson, 156 Wash.2d at 509, 130 P.3d 820. Mr. Bisson wanted to withdraw his pleas to the deadly weapon enhancements only. Or, alternatively, he wanted to be sentenced to concurrent enhancements  as he understood the plea agreement provided. Our Supreme Court held that he was not entitled to either remedy, and it remanded the case to the trial court with directions to permit Mr. Bisson to withdraw his pleas entirely. Id. at 510, 130 P.3d 820.
¶ 30 The Bisson court observed at page 521 that Mr. Bisson's plea agreement "indisputably included a promise of five 24-month enhancements." It was the State's errors that left ambiguous whether the weapon enhancements were to be served concurrently or consecutively (as the law required). Id. at 521, 130 P.3d 820.
¶ 31 The court rejected Mr. Bisson's argument that under contract law, an ambiguous agreement is interpreted against the party that drafted the agreement. Id. at 522, 130 P.3d 820. It noted that plea agreements are *622 contracts, and that in the commercial context, "[i]t is well established that a contract, oral or otherwise, is not subject to specific performance unless the precise act sought to be compelled is clearly ascertainable.'" Id. at 523-24, 130 P.3d 820 (alteration in original) (quoting Emrich v. Connell, 105 Wash.2d 551, 558, 716 P.2d 863 (1986)). And, prior Washington cases have upheld specific performance only where the prosecutor's promise was not susceptible to more than one meaning. Id. at 524, 130 P.3d 820; see, e.g., Cosner, 85 Wash.2d at 50-51, 530 P.2d 317 (enforcing provision of plea agreement that erroneously reduced the defendants' mandatory minimum sentence from seven and a half years to five years).
¶ 32 The court in Bisson held that "specific performance would have been an available remedy here, had the State expressly promised Bisson that his five 24-month weapon enhancements would be served concurrently." Bisson, 156 Wash.2d at 524-25, 130 P.3d 820. But "because the State has conceded nothing more than uncertainty in the provision and because we find the State's concession reasonable, the specific performance that Bisson requests must be denied." Id. at 525, 130 P.3d 820.
¶ 33 Mr. Murillo argues from Bisson that the basis of the plea agreement here was the understanding of both the State and the defense that Mr. Murillo's determinate sentence would be in the standard range. While the terms of their written agreement were inconsistent, Mr. Murillo asserts there is no inconsistency or ambiguity in the parties' actual agreement of a standard range sentence. In contrast, in Bisson, there was no express promise, either orally or in writing, the enhancements would run concurrently. Id. at 523-24, 130 P.3d 820. Mr. Murillo persuasively distinguishes his case from the facts in Bisson.
¶ 34 Mr. Murillo is entitled to specific performance of a plea agreement if the parties understood his correct sentence would be within the standard range. We must then transfer the petition for fact finding on this factual question. RAP 16.11(b). The terms of that agreement must be decided by the trial court following its fact-finding hearing. RAP 16.11(b); see Walsh, 143 Wash.2d 1, 17 P.3d 591.
¶ 35 Mr. Murillo also continues to maintain that he was entitled by agreement to a sentence at the low end of the range. But the State specifically reserves its recommendation in the plea agreement. And the court at the guilty plea hearing noted as much. Petition Ex. J at 2. Defense counsel's understanding that the prosecutor would recommend a sentence at the low end of the range contradicts the writing itself. "The parol evidence rule provides that all prior negotiations, conversations and parol agreements merge into a final, unambiguous, integrated writing, and extrinsic evidence is inadmissible to add to, subtract from, vary or contradict the terms of the instrument." Orsi v. Aetna Ins. Co., 41 Wash.App. 233, 237, 703 P.2d 1053 (1985). Mr. Murillo is bound then by the written statement on plea of guilty.
¶ 36 In sum, we conclude that the plea agreement is inconclusive as to whether a determinate sentence or a sentence under RCW 9.94A.712 was contemplated. And the parties do not agree on what was intended. The trial court must resolve that dispute if, and only if, Mr. Murillo asks for specific performance of the determinate standard range sentence.
¶ 37 The prosecutor made no enforceable agreement to recommend the low end of the range. The written plea agreement is clearthe State reserved any promise as to sentencing. Mr. Murillo therefore has no claim for breach of the plea agreement on this basis.
¶ 38 We need not address Mr. Murillo's claim of ineffective assistance of counsel given our disposition.
¶ 39 The petition is granted and the cause is remanded for proceedings consistent with this opinion.
¶ 40 The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules *623 governing unpublished opinions. RCW 2.06.040.
WE CONCUR: SCHULTHEIS and KATO, JJ.
NOTES
[1] Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
[2] (1) An offender who is not a persistent offender shall be sentenced under this section if the offender:

(a) Is convicted of:
(i) . . . child molestation in the first degree. . .;
. . . .
committed on or after September 1, 2001;
. . . .
(3) Upon a finding that the offender is subject to sentencing under this section, the court shall impose a sentence to a maximum term consisting of the statutory maximum sentence for the offense and a minimum term either within the standard sentence range for the offense, or outside the standard sentence range pursuant to RCW 9.94A.535 [exceptional sentences], if the offender is otherwise eligible for such a sentence.
. . . .
(5) When a court sentences a person to the custody of the department under this section, the court shall, in addition to the other terms of the sentence, sentence the offender to community custody under the supervision of the department and the authority of the board for any period of time the person is released from total confinement before the expiration of the maximum sentence.
Former RCW 9.94A.712 (2001) (emphasis added). The statute was reenacted, effective July 1, 2006, with some changes. The substance of the statute, in the part pertinent here, remained the same.