IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32357-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSE FIDEL MANDUJANO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Jose Fidel Mandujano appeals an amended judgment and sentence entered five months after he was initially sentenced for convictions of first degree rape of a child and first degree child molestation. According to the State, the amended judgment and sentence corrected what had appeared in the original judgment and sentence to be an illegal determinate sentence by imposing a legal, indeterminate sentence. Mr. Mandujano likens his case to *In re Pers. Restraint of Murillo*, 134 Wn. App. 521, 142 P.3d 615 (2006), in which a determinate sentence was also modified to be indeterminate and this court held that mistakes in information provided to the defendant when he entered his guilty plea required that the superior court allow him to withdraw his plea.

The combination of mistakes made in the statement of defendant on plea of guilty and the overall lack of clarity as to the sentence faced by Mr. Mandujano warrants allowing him to withdraw his guilty plea. We remand the case with instructions to the court to allow Mr. Mandujano to withdraw it.

FACTS AND PROCEDURAL BACKGROUND

On September 17, 2013, Jose Fidel Mandujano entered an *Alford*[1] plea to one count of first degree rape of a child and one count of first degree child molestation. Assisted by a court certified interpreter, Mr. Mandujano informed the court that he entered into the plea voluntarily, and with full understanding of the statement of defendant on plea of guilty to sex offense presented to the court. The plea statement included the following information and table (a column in the table dealing with enhancements has been eliminated due to space limitations and italicized text in the original has been eliminated so that handwritten entries can be, and are, indicated by italics):

Each crime with which I am charged carries a maximum sentence, a fine, and a **Standard Sentence Range** as follows:

| COUNT NO. | OFFENDER SCORE J - M | STANDARD RANGE ACTUAL CONFINEMENT (not including enhancements) | COMMUNITY CUSTODY | MAXIMUM TERM AND FINE |
|---|---|---|---|---|
| 1 | ~~3~~ 4 | ~~120-160~~ months *129–171* | 36 months | Life / $50,000 |

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

| 2 | ~~3~~ 4 | ~~69 89~~ months *72–96* | 36 months | Life / $50,000 |
|---|---|---|---|---|

Clerk's Papers (CP) at 56.

The section of the plea statement addressing what the prosecutor would recommend to the judge was completed as follows (handwritten portions are again indicated by italics):

> Recommend a sentence of *129* months on Count 1 and *96* [months]on Count 2, to be run concurrent. Client to pay all standard court costs and fees, a crime victim assessment, and restitution if any. *Post conviction sexual assault protection order and 36 months community custody on each count.*

CP at 59.

Preprinted sections of the plea statement included one that explained that for certain sex offenses committed on or after September 1, 2001, the judge

> will impose a maximum term of confinement either . . . within the standard range for the offense or outside the standard range if an exceptional sentence is appropriate. The minimum term of confinement that it is imposed may be increased by the Indeterminate Sentence Review Board if the Board determines by a preponderance of the evidence that it is more likely than not that I will commit sex offenses if released from custody.

CP at 57. This was one section in a 10-page single spaced document in which only about two pages worth of text had been stricken as irrelevant.

As completed and signed, the plea statement indicates that Mr. Mandujano did not personally read it, but that his lawyer or an interpreter (or perhaps both) read it to him.

The plea statement was signed by a Spanish language interpreter, who represented that he or she had "interpreted this document for the defendant from English into that language." CP at 63.

The court that accepted Mr. Mandujano's guilty plea engaged in a colloquy with him. After identifying the charges to which Mr. Mandujano was pleading guilty as "rape of a child in the first degree and child molestation in the first degree" the court asked, and Mr. Mandujano answered:

> THE COURT: Do you understand the first ever [sic] those carries a standard range of 129 months to 171 months with a maximum term and fine of life and $50,000 and the second has a standard range of 72 to 96 months with a maximum term and fine of life and $50,000. Do you understand that?
> DEFENDANT THROUGH INTERPRETER: Yes.

Report of Proceedings (RP) (Sept. 17, 2013) at 4. There was no mention during the colloquy of indeterminate sentencing or the indeterminate sentencing review board. There was no mention of community custody.

At the sentencing hearing six weeks later, the State recommended that Mr. Mandujano be sentenced to 129 months to life for count I and 96 months to life for count II. Defense counsel asked the court to "go along with the recommendation." RP (Oct. 29, 2013) at 3. After recounting Mr. Mandujano's criminal history and stating that it would dismiss counts III and IV, the court said:

4

Restitution to health care authority of $949.55. Victim assessment $500.00. Court costs $282.22. Fine of $500.00. DNA [deoxyribonucleic acid] $100.00. DNA testing pursuant to paragraph 4.2. 129 months on Count I. 96 months on Count II, with a maximum of life.

*Id.*

Relevant portions of a table at section 2.3 of the judgment and sentence, "Sentencing Data," was completed as follows (columns for the seriousness level and enhancements have been eliminated due to space limitations):

| COUNT NO. | OFFENDER SCORE | STANDARD RANGE (not including enhancements) | Total STANDARD RANGE (including enhancements) | MAXIMUM TERM |
|---|---|---|---|---|
| I | 4 | 129 to 171 months | 129 to 171 months | Life / $50,000.00 |
| II | 4 | 72 to 96 months | 72 to 96 months | Life / $50,000.00 |

CP at 21.

Section 4.5 of the judgment and sentence was completed as follows, with handwritten entries indicated by italics:

**4.5 CONFINEMENT OVER ONE YEAR.** The defendant is sentenced as follows:
(a) **CONFINEMENT.** RCW 9.94A.589. Defendant is sentenced to the following term of total confinement in the custody of the Department of Corrections:
*129* months on Count I          *96* months on Count II

CP at 26.

And section 4.6 was completed as follows:

**4.6 [X] COMMUNITY CUSTODY.**
A.    The defendant shall be on community custody for the longer of:
    (1)  the period of early release.  RCW 9.94A.728(1)(2); or
    (2)  the period imposed by the court as follows:
        Count I for 36 months
        Count II for 36 months;

. . . .
    (3)  **Sex offenses ONLY:**  For counts I and II, sentenced under
RCW 9.94A.507, for any period of time the defendant is released from total
confinement before the expiration of the statutory maximum.

*Id.*

Five months after sentencing, on February 25, 2014, the parties appeared before

the sentencing judge again, for the State's presentment of an amended judgment and

sentence that it explained was being offered because the Department of Corrections had a

"problem with [Mr. Mandujano's] judgment and sentence" since the words "to life" had

not been included in the term of confinement completed by the court.  RP (Feb. 25, 2014)

at 3-4.  The State's proposed amended judgment and sentence modified the relevant

portions of sections 2.3, 4.5 and 4.6 as follows.  Changes are underlined.  Once again,

italics indicate handwriting.

Section 2.3 now read:

6

| COUNT NO. | OFFENDER SCORE | STANDARD RANGE (not including enhancements) | Total STANDARD RANGE (including enhancements) | MAXIMUM TERM |
|---|---|---|---|---|
| I | 4 | 129 to 171 months <u>to</u> <u>Life</u> | 129 to 171 months <u>to</u> <u>Life</u> | Life / $50,000.00 |
| II | 4 | 72 to 96 months <u>to</u> <u>Life</u> | 72 to 96 months <u>to</u> <u>Life</u> | Life / $50,000.00 |

CP at 6.

Section 4.5 of the judgment and sentence now read:

**4.5 CONFINEMENT OVER ONE YEAR.** The defendant is sentenced as follows:
(a)    **CONFINEMENT.** RCW 9.94A.589. Defendant is sentenced to the following term of total confinement in the custody of the Department of Corrections:
   *129* months on Count I *– to life*    *96* months on Count II *to life*

CP at 11.

And section 4.6 now read:

**4.6 [X] COMMUNITY CUSTODY.**
A.    The defendant shall be on community custody for the longer of:
   (1)  the period of early release. RCW 9.94A.728(1)(2); or
   (2)  the period imposed by the court as follows:
      Count I <u>for Life</u>
      Count II <u>for Life</u>;
   . . . .
   (3)  **Sex offenses ONLY:** For counts I and II, sentenced under RCW 9.94A.507, for any period of time the defendant is released from total confinement before the expiration of the statutory maximum.

7

No. 32357-9-III
*State v. Mandujano*

*Id.*

Defense counsel objected to amendment, arguing that no transcript of the sentencing had been provided and the State had not demonstrated that any error had been made in completing the judgment and sentence:

> [DEFENSE COUNSEL]: Well, Your Honor, before we get carried away, . . . I think we have to determine whether or not there is even a basis to file an amended judgment and sentence.
> This isn't a situation where it's a scrivener's error, but instead the original judgment and sentence reflected what the court stated at the time sentence was imposed. So does the court have authority to amend the judgment and sentence when in fact the State did not object to it at the time and did not file a notice of appeal concerning the original judgment and sentence[?]

RP (Feb. 25, 2014) at 3. The prosecutor represented to the court that the sentence as announced by the court had been "129 months to life on Count 1" and "96 months to life on Count 2" and the only error was in the judgment and sentence. *Id.* at 4. Defense counsel responded that "unless there is proof that they said that in court, there is no basis to amend the judgment and sentence." *Id.*

The court rejected the defense objections and signed the amended judgment and sentence. Mr. Mandujano appeals.

8

ANALYSIS

Mr. Mandujano argues that his guilty plea was not entered knowingly, intelligently, or voluntarily because he was misinformed about the consequences of his plea. The issue is raised on direct appeal of the amended judgment, so the only evidence that he was misinformed is the record of the plea hearing itself.

"Due process requires that a defendant's guilty plea be knowing, voluntary, and intelligent." *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 297, 88 P.3d 390 (2004) (citing *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969)). "A guilty plea is not knowingly made when it is based on misinformation of sentencing consequences." *Id.* at 298. "A defendant need not be informed of all possible consequences of his plea, but he must be informed of all direct consequences." *Id.*

Mr. Mandujano committed the crimes at issue between June 1, 2007, and March 30, 2008. Under former RCW 9.94A.712(3) (2006),[2] the court was required to sentence him to the statutory maximum—life imprisonment—and to set a minimum term within the standard sentence range, unless he qualified for an exceptional sentence. *Murillo*, 134 Wn. App. at 524; RCW 9A.20.021(1)(a) (maximum sentence for class A felonies). The term ultimately served is then subject to determination by the indeterminate sentencing review board of the state department of corrections. Chapter

---

[2] *Recodified as* RCW 9.94A.507 by LAWS OF 2008, ch. 231, § 56, effective August 1, 2009.

9

9.95 RCW. The court was further required to sentence Mr. Mandujano to lifetime community custody under the supervision of the department following his release from total confinement. Former RCW 9.94A.712(5).

In *In re Personal Restraint of Murillo*, 134 Wn. App. 521, 142 P.3d 615 (2006), this court held that the maximum sentence of life imprisonment and lifetime community custody following release from total confinement are both direct consequences of a defendant's plea to a crime subject to former RCW 9.94A.712. As here, the department of corrections saw on receiving custody of Mr. Murillo that his judgment and sentence did not reflect his maximum sentence of life or lifetime community custody. As here, it required that the judgment and sentence be corrected. After the sentencing court amended the judgment and sentence as requested, Mr. Murillo filed a personal restraint petition in which he argued that he had been misled to enter a plea that, as a result, was not knowing and voluntary.

Mr. Murillo's plea statement was similar to Mr. Mandujano's plea statement, which indicated that the outside "standard range of actual confinement" was the high end of the standard range, when it is actually life imprisonment for a sex offender subject to indeterminate sentencing. *Compare* 134 Wn. App. at 525 *with* CP 56. Like Mr. Mandujano's plea statement, Mr. Murillo's plea statement included preprinted language describing indeterminate sentencing for the sex offenses to which he had pleaded guilty.

10

134 Wn. App. at 525. Nonetheless, because Mr. Murillo's plea was accepted without mention by the court that it must impose a maximum sentence, that the sentence within the standard range would represent only a minimum term, or that he was subject to a life term of community custody, this court held that Mr. Murillo must be allowed to withdraw his plea.[3]

The State argues that *Murillo* is distinguishable because the court at Mr. Mandujano's change of plea hearing was clearer about the maximum term to which he would be sentenced; that Mr. Murillo's claim, arising in a personal restraint petition, was better supported by his testimony that he was misled; and that there was evidence that Mr. Murillo's defense attorney misled him. Br. of Resp't at 8-10. Its efforts to distinguish *Murillo* are not persuasive.

Before the change of plea hearing, Mr. Mandujano had reviewed the 10-page plea statement. The portions of the statement that had been completed with sentence range information specific to him were wrong. The standard range of actual confinement indicated that the outside of the range was the high end of the standard range rather than life. CP at 56 (§ 6(a)). It was this same error in his initial judgment and sentence that the

---

[3] This court also held that Mr. Murillo could request specific performance of the illegal determinate sentence depending on the results of an evidentiary hearing following remand based on *State v. Miller*, 110 Wn.2d 528, 531, 756 P.2d 122 (1988). *Murillo*, 134 Wn. App. at 533. *Miller* has since been overruled on that point. *State v. Barber*, 170 Wn.2d 854, 248 P.3d 494 (2011). Mr. Mandujano seeks only to withdraw his plea.

department of corrections required to be corrected.[4] The disclosure of the community

custody he faced stated "36 months." *Id.* at 59 (§ 6(g)). The disclosure of the sentence

that would be recommended by the prosecutor said "Recommend a sentence of 129

months on Count 1 and 96 months on Count 2, to be run concurrent," with no indication

these were minimums and no mention of a lifetime maximum. *Id.* Given these problems

with the plea statement, the fact that Mr. Mandujano confirmed that he had reviewed it

does not help the State. The preprinted portions of the 10-page document provided

conflicting (and correct) information about indeterminate sentencing—it cannot

overcome the case-specific mistakes in this case any more than they did in *Murillo.*

The court's single statement to Mr. Mandujano about the sentence he faced is also

not clear enough to overcome the misleading information in the plea statement. To

repeat, the court stated:

> Do you understand the first ever [sic] those carries a standard range of 129
> months to 171 months with a maximum term and fine of life and $50,000
> and the second has a standard range of 72 to 96 months with a maximum
> term and fine of life and $50,000. Do you understand that?

RP (Sept. 17, 2013) at 4. Mr. Mandujano's criminal history included in his judgment and

sentence indicates that his only prior conviction had been for distribution of

methamphetamine, a crime for which there is also a standard range and a maximum term,

---

[4] Following correction, the first amended judgment and sentence identifies the
"STANDARD RANGE (not including enhancements)" as "129-171 months to Life" and
"72-96 months to Life." CP at 6.

12

but for which he would have received a determinate sentence. Given Mr. Mandujano's lack of experience with indeterminate sentencing, the court's reference to a "maximum term . . . of life" could have been understood to refer to the statutory maximum, not a mandatory maximum that would be imposed on Mr. Mandujano.

The absence of testimony from Mr. Mandujano as to what he was told by his lawyer and subjectively believed about the sentence he faced does not detract from his challenge. In *In re Personal Restraint of Isadore*, 151 Wn.2d 294, 300, 88 P.3d 309 (2004), the Washington Supreme Court adhered to a historical analytical framework under which it determines whether a guilty plea is voluntary in the constitutional sense by examining whether a defendant was informed of all direct consequences of his plea. It explicitly rejected an analysis that requires an appellate court to inquire into the *materiality* of those direct consequences in a defendant's subjective decision to plead guilty. *Id.* at 302.

> A reviewing court cannot determine with certainty how a defendant arrived at his personal decision to plead guilty, nor discern what weight a defendant gave to each factor relating to the decision. If the test is limited to an assertion of materiality by the defendant, it is of no consequence as any defendant could make that after-the-fact claim.

*Id.* We can decide the issue of constitutional voluntariness without testimony from Mr. Mandujano.

13

Finally, the testimony of defense counsel does not appear to have been given weight in the balance in *Murillo*, since Mr. Murillo's lawyer testified inconsistently. While he initially provided a declaration stating that he had failed to explain the lifetime maximum sentence to his client, he later corrected himself, explaining that after reviewing transcripts and refreshing his recollection, he had "'informed Mr. Murillo that the plea would result in an indeterminate sentence with life being the top end.'" 134 Wn. App. at 529. In this case, Mr. Mandujano's trial lawyer did not provide testimony as to what he told his client but he did appear when the amended judgment was presented and protested, arguing that the initial sentence had been the agreed sentence. Evidence as to defense counsel's advice is not a basis for distinguishing this case from *Murillo*.

We remand the case with instructions to the court to allow Mr. Mandujano to withdraw his plea.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____        _____
Fearing, J.                                                  Lawrence-Berrey, J.

14