IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 40561-3-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JESUS TORRES-ALMEIDA | ) | |
| | ) | |
| Appellant. | ) | |

HILL, J. — Jesus Torres-Almeida challenges the superior court's authority to amend his judgment and sentence under CrR 7.8. He acknowledges his sentence lacked a maximum term of confinement as required under RCW 9.94A.507 but argues that this error is judicial rather than clerical and, therefore, the court cannot correct it on a CrR 7.8 motion. In the alternative, Torres-Almedia argues his earlier plea agreements were invalid because he did not know he faced an indeterminate sentence. We affirm.

FACTS

In 2012, Torres-Almeida pleaded pled guilty to rape of a child in the second degree and rape of a child in the third degree. These charges required the court to impose an indeterminate sentence with a specified minimum term within a standard range and a maximum term consistent with the statutory maximum for each crime. In exchange for Torres-Almeida's plea, the State agreed to recommend a Special Sexual Offender Sentencing Alternative (SSOSA) under RCW 9.94A.670. The court followed the parties'

recommendation and sentenced Torres-Almeida to an indeterminate sentence with a minimum term of 115 months and a maximum term of life.[1]  The court then suspended the sentence and imposed a SSOSA.

In 2015, the State charged Torres-Almeida with new crimes.  As part of a plea agreement, the parties agreed Torres-Almeida would not contest the State's motion to revoke the 2012 SOSSA, the State would dismiss most of the new charges, and the parties would jointly recommend an exceptional sentence on the low end of the standard range on the 2015 case to run concurrently with the 2011 case.

At sentencing, the parties addressed the 2015 case first.  The court declined to follow the parties' recommendation.  It imposed a low-end sentence but ran it consecutively to the 2012 sentence.  After a brief recess, the parties proceeded to the 2012 case.  The State handed the court an amended judgment and sentence.  Apparently, the parties at some point crossed out and initialed the indeterminate sentence language from the amended judgment and sentence.  CP at 83.  Torres-Almeida claims the parties agreed during the recess to put forward a determinate sentence recommendation.  But no such agreement was discussed on the record and neither party brought the crossed-out

---

[1] With respect to the count of rape of a child in the third degree, the court imposed 30 months and ran it concurrently with the other count.  CP 43.  The statutory maximum for rape of a child in the third degree is five years.  As count 2 runs concurrently with the longer sentence in count 1, we do not mention it further as it is irrelevant to our analysis

section of the amended judgment and sentence to the trial court's attention.  The court

signed the amended judgment and sentence, effectively imposing a determinate sentence

of 102 months.  However, the court never stated it intended to impose a determinate

sentence and had earlier commented it was imposing the original 2012 sentence without

the SSOSA.

In 2024, the State filed a Motion under CrR 7.8 to once again amend the 2012

sentence because it did not list the maximum term of confinement required for an

indeterminate sentence.  Torres-Almeida responded with a Motion for Specific

Performance, arguing that the parties agreed to the determinate sentence and the State

was bound by that recommendation.  The State denied making any agreement to a

determinate sentence and noted that such a sentence was unlawful.  The court granted the

State's motion and amended the 2012 judgment and sentence by imposing a minimum

term of 102 months and maximum term of life.  Torres-Almeida timely appeals.

*Clerical vs. Judicial Error*

Torres-Almeida does not dispute that the court in 2015 amended his 2012

judgment and sentence to a determinate sentence not authorized by law.  However, he

disputes the court's authority in 2024 to correct the error under CrR 7.8.  Since the State

and decision.

brought the motion under CrR 7.8 and the court made its decision within that framework, our analysis is limited to the court's authority under this rule.

LAW AND ANALYSIS

We review a trial court's CrR 7.8 ruling for an abuse of discretion. *State v. Zavala-Reynoso*, 127 Wn. App. 119, 122, 110 P.3d 827 (2005). "A court abuses its discretion when its decision is manifestly unreasonable, or exercised on untenable grounds or for untenable reasons." *Gildon v. Simon Prop. Grp., Inc.*, 158 Wn.2d 483, 494, 145 P.3d 1196 (2006).

CrR 7.8(a) allows trial courts to correct clerical errors "arising from oversight or omission" before the appellate court accepts review. The court in *State v. Rowland*, 97 Wn. App. 301, 983 P.2d 696 (1999) provided the following rationale for the rule:

> This procedure reduces the time required to address concerns related to miscalculated, and thus erroneous, standard ranges. Further, it properly gives the trial court the first opportunity to correct simple calculation errors, avoids the potential for unnecessary incarceration and subsequent finality problems, and provides for a better record on review, if necessary. The delay and expense incurred due to an unnecessary appeal may also be avoided.

*Rowland*, 97 Wn. App. at 305-06. "Clerical errors are those that do not embody the trial court's intention as expressed in the trial record." *State v. Bartholomew*, 28 Wn. App. 2d 811, 818, 539 P.3d 22 (2023) (quoting *State v. Morales*, 196 Wn. App. 106, 117, 383 P.3d 539 (2016)). If an error does not meet the clerical error definition, then it is

4

considered a judicial error and may not be amended pursuant to CrR 7.8.  *Morales*, 196

Wn. App. at 118.  The question then is whether the error in this case was clerical or

judicial.

Torres-Almeida contends the court in 2015 committed judicial error when it

amended his 2012 judgment and sentence to impose a determinate term of confinement.

He likens this matter to *State v. Bartholomew*.  In *Bartholomew,* the defendant was

convicted of aggravated first degree murder and sentenced to life in prison without the

possibility of release.  *Bartholomew*, 28 Wn. App. 2d at 813.  The Washington Supreme

Court subsequently reversed his sentence as unconstitutional and remanded the matter to

the trial court to consider whether mitigating qualities applied to him.  *Bartholomew*, 28

Wn. App. 2d at 813-14.  Washington law required the trial court to sentence those who

commit aggravated first degree murder to life in prison without the possibility of release

or parole.  *Bartholomew*, 28 Wn. App. 2d at 814.  However, at his resentencing hearing,

the defendant and the State agreed that Bartholomew should be sentenced according to an

exception allowing for a minimum term of confinement.  *Bartholomew*, 28 Wn. App. 2d

at 814-15.  The trial court agreed to impose a minimum term.  *Bartholomew*, 28 Wn.

App. 2d at 815.

Before the court imposed the agreed sentence, the State reversed its position,

arguing that the trial court lacked the authority to sentence Bartholomew to a minimum

5

term. *Bartholomew*, 28 Wn. App. 2d at 815.  The court imposed a life sentence and did

not address a minimum term. *Bartholomew*, 28 Wn. App. 2d at 816.  Following the new

judgment and sentence, the Indeterminate Sentence Review Board sent the court and

parties a letter requesting a minimum term for Bartholomew's sentence. *Bartholomew*,

28 Wn. App. 2d at 816.  Bartholomew filed a CrR 7.8 motion asking the court to set a

minimum term. *Bartholomew*, 28 Wn. App. 2d at 817.  Relying specifically on CrR

7.8(a), he argued that the trial court's failure to set a minimum term was a clerical error.

*Bartholomew*, 28 Wn. App. 2d at 817.  The State objected, but the court granted the

motion, claiming its failure to set a minimum term was mere oversight. *Bartholomew*, 28

Wn. App. 2d at 817.

The State appealed, arguing the sentencing court erred by granting Bartholomew's

CrR 7.8(a) motion because the setting of a minimum term was a substantive change, not a

mere oversight. *Bartholomew*, 28 Wn. App. 2d at 818.  Division II agreed, holding that

the original sentencing court intentionally decided not to fix a minimum term because it

wrongly believed it did not have the authority to do so. *Bartholomew*, 28 Wn. App. 2d at

818.  Division II reversed the sentencing court's CrR 7.8(a) order because the alleged

error was judicial, and therefore not eligible for correction under the rule. *Bartholomew*,

28 Wn. App. 2d at 819-20.

Torres-Almeida contends, like *Bartholomew*, that the court in 2015 intended to give him a determinate sentence, making the error judicial rather than clerical. We disagree.

Under the SSOSA statute, RCW 9.94A.670(4), if the trial court finds a SOSSA sentence is appropriate, the court must impose a standard range sentence at the same time it orders the SOSSA. If the sentencing guidelines require an indeterminate sentence, the court must impose a minimum term within the standard range and a maximum term consistent with the statutory maximum for the crime. The sentence is then suspended. If the SOSSA is revoked, the trial court signs an order imposing the suspended sentence. RCW 9.94A.670(11); *State v. Zwede*, 21 Wn. App. 2d. 843 (2022). The court does not conduct a new sentencing hearing but rather reinstates the previously imposed sentence. *State v. Morrison*, 70 Wn. App. 593, 855 P.2d 696 (1993).

Contrary to *Bartholomew*, the record from 2015 does not reflect any statement by the court, or discussion from the parties, on whether the court should impose a determinate or indeterminate sentence. Critical to the holding in *Bartholomew* was the parties' disagreement on the record over whether the defendant should be sentenced to a minimum term before the court elected not to impose one. *Bartholomew*, 28 Wn. App. 2d at 815. There is no such record before us in Torres-Almeida's case. Instead, the only thing the trial court said was that Torres-Almeida had previously been sentenced and the

court was merely amending the judgment and sentence [presumably to account for the revoked SSOSA]. The 2012 judgment and sentence imposed an indeterminate sentence. The record supports a finding that the court intended to impose the suspended sentence, making the error clerical rather than judicial. The court in 2024 properly corrected the error by amending the judgment and sentence to reimpose an indeterminate sentence.

*Plea Agreement*

Torres-Almeida argues his plea in 2012 is invalid because he was not informed he was agreeing to an indeterminate sentence if the trial court did not impose a SSOSA. Additionally, he claims the plea agreement did not inform him that he could receive a maximum term of life in prison. He also claims that he bargained away his due process rights to contest the SSOSA revocation in 2015 in exchange for a determinate sentence.

"We review the constitutional adequacy of a defendant's plea de novo." *State v. Snider*, 199 Wn.2d 435, 444, 508 P.3d 1014 (2022). A defendant's plea must be knowing, voluntary, and intelligent. *Snider*, 199 Wn.2d at 444. "When a defendant pleads guilty after receiving a charging document that accurately describes the elements of the offense charged, their plea is presumed to be knowing, voluntary, and intelligent." *Snider*, 199 Wn.2d at 445.

"[A] guilty plea may be deemed involuntary when based on misinformation regarding a direct consequence of the plea, regardless of whether the actual sentencing

range is lower or higher than anticipated." *State v. Buckman*, 190 Wn.2d 51, 59, 409 P.3d

193, 198 (2018) (quoting *State v. Mendoza*, 157 Wn.2d 582, 591, 141 P.3d 49 (2006)).

Courts must allow defendants who involuntarily agree to a plea to withdraw their plea. *In

re Pers. Restraint of Murillo*, 134 Wn. App. 521, 530, 142 P.3d 615, 620 (2006).

Torres-Almeida cites *Murillo*, 134 Wn. App. at 521 as analogous to the present

case. In *Murillo*, the defendant pled guilty to first degree child molestation after being

misinformed by both the judge and counsel that he was agreeing to a sentence within the

51-68 month standard range.[2] *In re Murillo*, 134 Wn. App. at 526. The Department of

Corrections subsequently notified the court that the sentence was unlawful because the

statute required a mandatory life sentence for sex crimes. *Murillo*, 134 Wn. App. at 532.

The court amended the judgment and sentence and imposed a minimum term of 59 ½

months and a maximum term of life. *Murillo*, 134 Wn. App. at 529. Murillo appealed,

arguing that he pled guilty believing he would receive a determinate sentence, and

requested specific performance for the State to honor the original sentence, even if it was

unlawful. *Murillo*, 134 Wn. App. at 532. We allowed Murillo to withdraw his plea,

finding it impossible to determine "who understood what," particularly in light of the

Judge's comments and the attorney's deposition. *Id*. at 531.

---

[2] During a subsequent deposition, Murillo's attorney admitted he did not discuss
the maximum term with his client and was unaware the court was required to impose it.

No such problems exist here. The 2012 plea agreement was not ambiguous. It correctly listed the standard range sentence and the maximum term. It informed Torres-Almeida that the judge would impose a minimum term within the standard range and a maximum sentence consistent with the maximum term. While the plea statement also contained language covering sex offenses that would not require a maximum term of confinement, these sections were clearly marked as applying to offenses not applicable to Torres-Almeida. When the court announced the indeterminate sentence and suspended it, Torres-Almeida neither objected nor appealed. Unlike *Murrillo*, the evidence here shows that Torres-Almeida made his decision to plead guilty in 2012, knowing he would receive an indeterminate sentence.

Torres-Almeida also fails to demonstrate that his SSOSA revocation agreement in 2015 was not made knowingly. In exchange for Torres-Almeida not challenging his SSOSA revocation, the State agreed to dismiss six counts from the new charges and recommend the low end of the standard range to run concurrently with his revoked SSOSA sentence. While Torres-Almeida claims that he reached a new agreement with the State to recommend a determinate sentence during a brief recess after he was sentenced on his new charges, this version of events would not help him even if true.

---

He later provided a conflicting declaration. *Id*. at 528-29.

Torres-Almeida agreed to revoke his SOSSA as part of a package deal.  This agreement was announced at the start of the hearing before the State dismissed most of the new charges and the court sentenced him in that case.  Torres-Almeida already gave up his right to contest the SSOSA before the recess where the parties allegedly agreed to make a new sentencing recommendation.

We have already found Torres-Almeida knew he faced an indeterminate sentence in 2012 when the court imposed such a sentence and suspended it for the SSOSA.  In 2015, the court only had the authority to impose the suspended indeterminate sentence.  Torres-Almeida's version of a recess negotiation would only further show he was aware the judge was about to impose the suspended sentence and the parties wanted to try and recommend something different.  As with any plea, a defendant is put on notice that the court need not follow the parties' sentencing recommendation.  A recess discussion between the parties on making a new sentencing recommendation in no way shows Torres-Almeida did not knowingly waive his right to challenge the SSOSA revocation before he pleaded and was sentenced on the new charges.

We conclude that Torres-Almeida knowingly waived his right to contest the SSOSA revocation in exchange for the State dismissing most of the new charges and a joint recommendation to run the remainder of the new charges concurrently with the 2012 indeterminate sentence.

11

No. 40561-3-III
*State v. Torres-Almeida*

CONCLUSION

The court in 2024 properly corrected a clerical error on Torres-Almeida's amended judgment and sentence pursuant to CrR 7.8(a). Torres-Almeida accepted a plea deal in 2012 and 2015 knowing he faced an indeterminate sentence. We affirm the trial court's decision in 2024 to amend the judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Hill, J.

WE CONCUR:

_____
Lawrence-Berrey, C. J.

_____
Staab, J.

12