# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of:<br><br>RYAN ROCQUIN,<br><br>        Petitioner, | No. 48755-1-II |
| In the Matter of the Personal Restraint of:<br><br>RYAN ROCQUIN,<br><br>        Petitioner. | (Consolidated with<br>No. 48758-6-II)<br><br>UNPUBLISHED OPINION |

LEE, C.J. — Ryan Rocquin seeks relief from personal restraint after he pled guilty to first degree molestation involving his five-year-old daughter under cause number 14-01-00203-6, and to sexual exploitation of a minor, first degree possession of depictions of a minor engaged in sexually explicit conduct, and second degree possession of depictions of a minor engaged in sexually explicit conduct under cause number, 14-01-00376-8. Rocquin timely filed a personal restraint petition (PRP) for both cause numbers, which we consolidated. Rocquin contends he is under unlawful restraint because (1) his defense counsel rendered ineffective assistance and (2) the sentencing court erred by imposing certain community custody conditions.

We reject Rocquin's ineffective assistance of counsel claim. We reverse the community custody conditions relating to drug paraphernalia; the purchase, possession or consumption of alcohol; and not entering any business where alcohol is the primary commodity for sale and

remand for the trial court to strike these conditions from Rocquin's judgment and sentences. We also reverse the community custody condition relating to plethysmograph examinations and remand for the sentencing court to either remove the condition from Rocquin's judgment and sentences or correct it to read that the plethysmograph testing is "for treatment purposes only." We affirm the remaining community custody conditions. Accordingly, we grant in part and deny in part Rocquin's PRP.

FACTS

The State charged Rocquin with first degree child molestation under Cause No. 14-01-00203-6 for an incident involving his five-year-old daughter. Four months later, the State filed another information, this one under Cause No. 14-01-00376-8, charging Rocquin with sexual exploitation of a minor, first degree possession of depictions of a minor engaged in sexually explicit conduct, and second degree possession of depictions of a minor engaged in sexually explicit conduct. Rocquin pled guilty to all charges in both cause numbers.

A.    CAUSE NUMBER 14-01-00203-6: FIRST DEGREE CHILD MOLESTATION

1.    Plea Agreement

Paragraph 1.1 of Rocquin's plea agreement on the child molestation charge states, "The current offense is subject to indeterminate sentencing pursuant to RCW 9.94A.507." Br. of Resp't at Att. B at 1. The box in front of this statement is **not** checked. Under "Other current convictions" in Paragraph 1.8, the plea agreement lists the current charge of "Child Molestation 1st." Br. of Resp't at Att. B at 2.

Paragraph 1.9 regarding "Sentencing Data" shows an offender score of 9 with a standard sentencing range of 149 to 198 months to life. Br. of Resp't at Att. B at 3 (boldface removed)

2

(some capitalization removed). Paragraph 1.9 also contains a handwritten insertion that "This sentence shall run concurrent with Grays Harbor Superior Court Cause No. 14-1-376-8." Br. of Resp't at Att. B at 3.

Paragraph 1.10(b) shows "Confinement" to be "198 months to Life." Br. of Resp't at Att. B at 3 (boldface removed) (some capitalization removed). Paragraph 1.10(d) shows community custody for "Life." Br. of Resp't at Att. B at 4 (emphasis omitted). And Paragraph 1.14 sets forth Rocquin's appeal and collateral attack rights.

2.      Statement of Defendant on Plea of Guilty

Paragraph 6 of the statement of defendant on plea of guilty (plea statement) on the child molestation charge concerns the consequences of Rocquin's guilty plea. Rocquin initialed this paragraph next to the number "6.". Br. of Resp't at Att. C at 2. One of the subsections states that the Indeterminate Sentence Review Board has the authority to increase the minimum term of confinement if the Board determines it is more likely than not that Rocquin will reoffend. Rocquin also specifically initialed Paragraph 6(g), which incorporated the plea agreement by reference. Contrary to the incorporated terms of the plea agreement, the plea statement shows an offender score of 1.

At the end of the plea statement, Rocquin did not check the boxes verifying that he had previously read and understood the entire plea statement, that Rocquin's lawyer had previously read to him the entire plea statement and that he understood it in full, or that an interpreter had previously read to Rocquin the entire plea statement and that he understood it in full were checked.

Consistent with the plea agreement, the plea statement sets forth Rocquin's appeal rights given up by pleading guilty in paragraph 5, a standard sentencing range of 149 to 198 months to

life, and a community custody term of life. Rocquin initialed each paragraph setting forth these terms.

3. Judgment and Sentence

At the sentencing hearing, the prosecutor advised the sentencing court that the standard range for the child molestation conviction "is 149 to 198 months to life. It is subject to review by the indeterminate sentence review board. I believe 198 months is appropriate as a bottom. He will then—life would be the maximum and it will be up to the department of corrections to determine his actual release date." Br. of Petitioner at Ex. H at 23.

The judgment and sentencing on the child molestation offense lists Rocquin's offender score as 9, with a standard sentencing range of 149 to 198 months to life. The statutory maximum is stated to be "Life." Br. of Resp't at Att. D at 2. The court sentenced Rocquin to 198 months to the "statutory maximum." Br. of Resp't at Att. D at 3. The court did not impose community custody. On the judgment and sentence, the box showing Rocquin is subject to indeterminate sentencing is checked.

B. CAUSE NUMBER 14-01-00376-8: FIRST DEGREE SEXUAL EXPLOITATION, FIRST DEGREE POSSESSION OF DEPICTIONS OF A MINOR ENGAGED IN SEXUALLY EXPLICIT CONDUCT, AND SECOND DEGREE POSSESSION OF DEPICTIONS OF A MINOR ENGAGED IN SEXUALLY EXPLICIT CONDUCT

1. Plea Agreement

In Paragraph 1.1 of Rocquin's plea agreement on the exploitation and possession charges, it states that the current offense of sexual exploitation is a most serious offense. Paragraph 1.8 lists "Other current convictions" as "Sexual Exploitation of a Minor," "Poss. Depictions 1st," and "Poss. Depictions 2nd." Br. of Resp't at Att. F at 2.

4

The Sentencing Data in Paragraph 1.9 shows an offender score of 9 with first degree sexual exploitation having a seriousness level of IX and standard range of 129 to 171 months; first degree possession of depictions of a minor engaged in sexually explicit conduct having a seriousness level of VI and standard range of 77 to 102 months; and second degree possession of depictions of a minor engaged in sexually explicit conduct having a seriousness level of V and standard range of 72 to 96 months. Paragraph 1.9 of the plea agreement also has a handwritten insertion that "This sentence shall run concurrent with Grays Harbor Superior Court Cause No. 14-1-203-6." Br. of Resp't at Att. F at 3.

Paragraph 1.10(b) of the plea agreement shows "Confinement" to be 171 months for first degree sexual exploitation, 102 months for first degree possession of depictions of a minor engaged in sexually explicit conduct, and 96 months for second degree possession of depictions of a minor engaged in sexually explicit conduct. Br. of Resp't at Att. F at 3 (boldface removed) (some capitalization removed). Paragraph 1.10(d) shows community custody for "36 months, or as required by law." Br. of Resp't at Att. F at 4. And Paragraph 1.14 sets forth Rocquin's appeal and collateral attack rights.

2.    Statement of Defendant on Plea of Guilty

The plea statement specifically incorporates the plea agreement by reference under paragraph 6(g). Contrary to the plea agreement, the plea statement shows no community custody for any the three convictions. Also, first degree sexual exploitation of a minor is a most serious offense, but paragraph 6(p) stating that the offense is a most serious offense is crossed out.

Consistent with the plea agreement, the plea statement shows an offender score of 9 for all three convictions with a standard sentencing range of 129 to 171 months for sexual exploitation of

a minor, 77 to 102 months for first degree possession of depictions of a minor engaged in sexually explicit conduct, and 72 to 96 months for second degree possession of depictions of a minor engaged in sexually explicit conduct.

3.    Judgment and Sentence

The judgment and sentence lists Rocquin's standard sentencing range as 129 to 171 month for first degree sexual exploitation of a minor, 77 to 102 months for first degree possession of depictions of a minor engaged in sexually explicit conduct, and 63 to 84 months (rather than 72-96 months as stated in the plea agreement) on the second degree possession of depictions of a minor engaged in sexually explicit conduct. The seriousness level for first degree sexual exploitation of a minor is IX; for first degree possession of depictions of a minor engaged in sexually explicit conduct is X (rather than VI as stated in the plea agreement); and for second degree possession of depictions of a minor engaged in sexually explicit conduct is V (should be IV).

The sentencing court sentenced Rocquin to 120 months on the exploitation offence, 102 months on the first degree possession offense, and 60 months on the second degree possession offense. The sentencing court imposed community custody of 36 months for all three offenses.

C.    COMMUNITY CUSTODY CONDITIONS

In Appendix H to the judgment and sentence under both cause numbers, the court imposed 29 community custody conditions. The community custody conditions include submitting to a plethysmograph examination as directed by Rocquin's community corrections officer; not possessing or perusing sexually explicit materials; not possessing drug paraphernalia; not

purchasing, possessing or consuming alcohol; and not entering any business where alcohol is the primary commodity for sale.

D.     PERSONAL RESTRAINT PETITION

Rocquin filed a personal restraint petition challenging his guilty pleas and sentences under both cause numbers. Given the above irregularities, we stayed the matter pending a reference hearing by the trial court to determine whether Rocquin understood the consequences of his plea. After holding a reference hearing, the trial court entered findings and conclusions. These findings and conclusions are addressed below.

## ANALYSIS

A.     STANDARD OF REVIEW

We have three available options when reviewing a personal restraint petition: (1) deny the petition, (2) transfer the petition to a superior court for a full determination on the merits or a reference hearing, or (3) grant the petition. *In re Pers. Restraint of Hews*, 99 Wn.2d 80, 88, 660 P.2d 263 (1983); RAP 16.11(b); RAP 16.12. We review reference hearing findings to determine if substantial evidence supports them. *In re Pers. Restraint of Stenson*, 174 Wn.2d 474, 488, 276 P.3d 286 (2012). Unchallenged findings of fact will be treated as verities on appeal. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 679, 101 P.3d 1 (2004).

B.     INEFFECTIVE ASSISTANCE OF COUNSEL

Rocquin contends he was denied effective assistance of counsel based on counsel's failure (1) to advise Rocquin as to the direct consequences of his guilty pleas, (2) to argue that Rocquin's first degree child molestation and sexual exploitation convictions entailed the same criminal

conduct for sentencing purposes, (3) to argue that the two convictions violate double jeopardy principles, and (4) to offer mitigating evidence to the sentencing court. We disagree.

1.    Legal Principles

To prevail on an ineffective assistance claim, a petitioner must prove that counsel's performance was deficient and the petitioner was prejudiced by the deficient performance. *State v. Estes*, 188 Wn.2d 450, 457-58, 395 P.3d 1045 (2017) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). If a defendant fails to show both deficient performance and resulting prejudice this court need not inquire further. *Id*. Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. *Id.* at 458. To show prejudice, Rocquin must demonstrate there is a probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.*

There is a strong presumption of effective assistance of counsel, and Rocquin bears the burden of demonstrating the absence of a legitimate strategy or tactical reason for the challenged conduct. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014). "[I]f a personal restraint petitioner makes a successful ineffective assistance of counsel claim, he has necessarily met his burden to show actual and substantial prejudice." *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).

Due process requires that a defendant's guilty plea be knowing, voluntary, and intelligent, and a defendant has a Sixth Amendment right to effective assistance of counsel in deciding whether to plead guilty. *In re Pers. Restraint of Isadore*, 151 Wn.2d 294, 297, 88 P.3d 390 (2004); *State v. Osborne,* 102 Wn.2d 87, 99, 684 P.2d 683 (1984). Defense counsel must inform the defendant of all direct consequences of the guilty plea. *State v. A.N.J.*, 168 Wn.2d 91, 113-14, 225 P.3d 956

(2010). Moreover, a plea was involuntary where the defendant was not fully informed of its consequences due to mistaken understanding that determinate sentencing applied. *In re Postsentence Review of Hudgens*, 156 Wn. App. 411, 415-17, 233 P.3d 566 (2010).

  2.  Knowing, Voluntary and Intelligent Plea

As discussed above, a number of irregularities in the various plea documents and judgments necessitated a reference hearing to determine whether Rocquin understood the consequences of his pleas. The trial court conducted a reference hearing to address the irregularities and its effect on Rocquin's understanding of the consequences of his pleas. The trial court made the following findings of fact, which are unchallenged and are verities on appeal:[1]

> [1.] In cause number 14-1-376-8, [Rocquin] was informed, prior to entry of his guilty plea, that the offense of Sexual Exploitation of a Minor is a "most serious offense" as defined in RCW 9.94A.030.

> [2.] [Rocquin] was informed, prior to entry of his guilty plea, of the impact of the other current convictions had upon his offender score. [Rocquin] was properly advised that his offender score on each count was nine points.

> [3.] [Rocquin] was fully informed that he would be on community custody for life, after his release from incarceration with the Department of Corrections.

> [4.] [Rocquin] was properly advised of the seriousness levels of the crimes to which he was pleading guilty, with the exception of Count 3 in cause number 14-1-376-8.

> [5.] Count 3 in cause number 14-1-376-8 should have listed the seriousness level as IV. However, this error had no impact on the ultimate sentence imposed upon [Rocquin] and did not result in him being misinformed regarding the consequences of his pleas.

> [6.] [Rocquin] was properly advised of the standard sentencing ranges for each crime under both cause numbers, with the exception of Count 3 in cause number 14-1-376-8.

---

[1] *State v. O'Neill*, 148 Wn.2d 564, 571, 62 P.3d 489 (2003).

[7.] Count 3 in cause number 14-1-376-8 should have listed the standard range as 63-84 months. However, this error had not [sic] impact on the ultimate sentence imposed upon [Rocquin] and did not result in him being misinformed regarding the consequences of his pleas.

[8.] In cause number 14-1-203-6, [Rocquin] was fully informed as to the differences between a determinate and indeterminate sentence, and that he was facing an indeterminate sentence. [Rocquin] acknowledged his full understanding by his initialing of paragraph 6 of the Statement of Defendant on Plea of Guilty.

[9.] [Rocquin] reviewed all of the plea documents at one meeting with trial counsel. As a result of reading the documents as a whole, [Rocquin] was fully aware of his offender score and that the multiple current convictions resulted in an offender score of nine on each count charged.

Clerk's Papers (CP) at 1-3. Based on these findings, Rocquin was aware of the direct consequences of his plea as required under *A.N.J.*, 168 Wn.2d at 113-14. Specifically, Rocquin was fully informed that indeterminate sentencing applied as required under *Hudgens*, 156 Wn. App. at 415-17. Accordingly, counsel's performance was not deficient. Therefore, Rocquin cannot establish ineffective assistance of counsel.

3. Same Criminal Conduct

Rocquin contends he received ineffective assistance of counsel when defense counsel failed to argue his offenses constituted the same criminal conduct. We disagree.

Under the Sentencing Reform Act, multiple current offenses are presumptively counted separately in determining a defendant's offender score unless the trial court finds that current offenses encompass the "same criminal conduct" and the crimes are then counted as one crime in determining the offender score. RCW 9.94A.589(1)(a). Rocquin alleges that by failing to ask the trial court for a finding of same criminal conduct under RCW 9.94A.589(1)(a), defense counsel was ineffective.

10

However, this case involved a negotiated plea agreement. The State agreed to not file additional charges and recommended the sentence agreed to in the plea agreement. Defense counsel strategically negotiated with the State on Rocquin's behalf. The plea agreement may have been undermined if counsel requested a same criminal conduct finding. Thus, there was strategic reason for counsel's conduct. Considering the plea agreement between the parties and the legitimate tactic of counsel, Rocquin fails to show that defense counsel's performance fell below an objective standard of reasonableness. Thus, his ineffective assistance of counsel claim fails.

4.     Double Jeopardy

Rocquin next contends defense counsel was ineffective for not arguing that his molestation and sexual exploitation convictions violate double jeopardy. We disagree.

The double jeopardy clauses of the Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution prohibit the imposition of multiple punishments for a single offense. *State v. French*, 157 Wn.2d 593, 612, 141 P.3d 54 (2006). "A 'defendant's double jeopardy rights are violated if he or she is convicted of offenses that are identical both in fact and in law.'" *State v. Fuentes*, 179 Wn.2d 808, 824, 318 P.3d 257 (2014) (quoting *State v. Calle*, 125 Wn.2d 769, 777, 888 P.2d 155 (1995)).

For the reasons discussed above regarding same criminal conduct, defense counsel strategically negotiated with the State on Rocquin's behalf. Thus, there was tactical reason for counsel's conduct. Considering the plea agreement between the parties and the legitimate tactic of counsel, Rocquin fails to show that defense counsel's performance fell below an objective standard of reasonableness. Thus, his ineffective assistance of counsel claim fails.

5.      Failure to Present Mitigating Evidence at Sentencing

Rocquin next contends that defense counsel was ineffective for failing to investigate and present mitigating evidence at sentencing. We disagree.

To establish ineffective assistance of counsel based on counsel's failure to investigate and present mitigating evidence, a petitioner must submit sufficient facts to support his or her claim. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 885-86, 828 P.2d 1086 (1992). Rocquin does not offer evidence to show what investigation was or was not done by defense counsel. To the contrary, our evidence shows that defense counsel was successful in helping Rocquin negotiate a plea agreement. There was no mitigation to be sought beyond the terms reached by the parties. Rocquin fails to show that defense counsel's performance fell below an objective standard of reasonableness. Thus, his ineffective assistance of counsel claim fails.

B.      COMMUNITY CUSTODY CONDITIONS

Rocquin contends several of his community custody conditions do not relate to his crimes. Specifically, he challenges the court's conditions that he not possess or peruse sexually explicit materials; he not possess drug paraphernalia; he not purchase, possess or consume alcohol; he not enter any business where alcohol is the primary commodity for sale; and he submit to a plethysmograph examination as directed by Rocquin's community corrections officer.

Pursuant to RCW 9.94A.505(9) and RCW 9.94A.703(3)(f), a sentencing court may impose crime-related prohibitions while a defendant is in community custody. A "'[c]rime-related prohibition' means an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). "'Directly related' includes conditions that are 'reasonably related' to the crime." *State v. Irwin*, 191 Wn. App. 644,

656, 364 P.3d 830 (2015) (quoting *State v. Kinzle*, 181 Wn. App. 774, 785, 326 P.3d 870, *review denied*, 181 Wn.2d 1019 (2014)). The State concedes that the challenged conditions, except the condition relating to sexually explicit materials, should be stricken.

We accept the State's concession regarding drug paraphernalia; the purchase, possession or consumption of alcohol; and not entering any business where alcohol is the primary commodity for sale because these prohibitions do not directly relate to the circumstances of Rocquin's crime. *See State v. Jones*, 118 Wn. App. 199, 208, 76 P.3d 258 (2003) (evidence must show drugs and alcohol contributed to the offense to support community custody prohibition). We also accept the State's concession that the condition that Rocquin submit to a plethysmograph examination as directed by his community corrections officer be stricken. (Br. of Respondent at 23) *See State v. Land*, 172 Wn. App. 593, 605, 295 P.3d 782, *review denied*, 177 Wn.2d 1016 (2013) (plethysmograph testing cannot be used as a routine monitoring tool but must be ordered "incident to crime-related treatment by a qualified provider.").

However, the community custody condition that Rocquin not possess or peruse sexually explicit materials directly relates to his crimes. Therefore, it was properly imposed by the sentencing court. *Irwin*, 191 Wn. App. at 656.

CONCLUSION

We grant Rocquin's PRP in part and reverse the community custody conditions relating to drug paraphernalia; the purchase, possession or consumption of alcohol; and not entering any business where alcohol is the primary commodity for sale and remand for the sentencing court to strike these conditions from Rocquin's judgment and sentences. We also reverse the community custody condition relating to plethysmograph examinations and remand for the sentencing court

No. 48755-1-II (Consolidated w/No. 48758-6-II)

to either remove the condition from Rocquin's judgment and sentences or correct it to read that the plethysmograph testing is "for treatment purposes only."

We affirm the remaining community custody conditions and deny the remainder of Rocquin's PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Maxa, J.

_____
Sutton, J.

14